**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Edward COLLIE, Defendant–Appellant.**

**No. 97CA1113.**

Colorado Court of Appeals, Div. II.

April 15, 1999.

As Modified on Denial of Rehearing June 10, 1999.

Certiorari Denied Feb. 22, 2000.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John J. Krause, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Nancy J. Lichtenstein, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge PLANK.

Defendant, Edward Collie, appeals the judgment of conviction entered upon jury verdicts finding him guilty of theft and conspiracy to commit theft. We affirm.

In 1994 and 1995, defendant induced homeowners to enter into contracts with his son's landscaping business, a corporation. After collecting an initial deposit and, in most instances, a progress payment upon completion of soil preparation work, the remainder of the work was never completed. All the checks were payable to the son, his wife, or the corporation.

When the business failed to complete the work in a timely fashion and refused to refund any of the payments received, defendant was charged with the offenses at issue here.

## I.

Defendant first contends that structural error occurred when the original trial judge filed a grievance against defendant's attorney in an unrelated matter and subsequently ruled on a number of pre-trial motions, which rulings, after the judge later disqualified himself, were adopted without independent review by the new judge. We disagree.

Not all errors of constitutional significance require reversal of a defendant's conviction. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Most such errors are properly susceptible to harmless error analysis, permitting an appellate court to affirm the conviction if it can say that the error did not contribute to the jury's determination of guilt beyond a reasonable doubt. *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Key v. People,* 865 P.2d 822 (Colo. 1994). Only those errors that pervasively prejudice the entire course of the proceedings so as to render the verdict in essence no verdict at all are structural defects that mandate reversal. *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); *Key v. People, supra.*

Observing that pre-trial rulings dictate the "procedure and content" of the subsequent proceedings, defendant argues that the effect of pre-trial rulings by a purportedly biased judge are such a structural defect mandating reversal. We are not persuaded.

No Colorado appellate court has previously addressed this issue. However, we note that only a few types of very serious errors have been held to be structural defects mandating reversal. They include: complete deprivation of the right to counsel, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); trial before a biased judge, *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); and improper jury instructions that usurp the jury's role of determining guilt on every material element of the charged offense, *People v. Vance,* 933 P.2d 576 (Colo.1997); *see People v. Price,* 969 P.2d 766 (Colo.App.1998).

The essence of a structural defect is that it must, *in every case in which it arises,* render appellate review meaningless because there is no proper basis on which the judgment might be affirmed. *Sullivan v. Louisiana, supra; Sherman v. Smith,* 89 F.3d 1134 (4th Cir.1996).

Defendant has failed to show that non-dispositive pre-trial rulings, regardless of their subject matter, made by a judge who later disqualifies himself from presiding over the remainder of a case, renders the resulting jury verdict in essence no verdict at all or that review of such orders for abuse of discretion or harmless error would be meaningless.

Thus, while the better practice would have been for the judge to disqualify himself immediately upon filing the grievance against defendant's attorney, we conclude that applying the original judge's pre-trial rulings in the remainder of the proceedings, without an independent review by the replacement judge, did not constitute structural error. *Cf. Floyd v. Coors Brewing Co.,* 952 P.2d 797 (Colo.App.1997), *rev'd on other grounds* 978 P.2d 663, 1999 WL 9769 (Colo.1999). This is particularly true here because, as analyzed below, we may consider on appellate review the propriety of the challenged rulings.

## II.

Defendant next contends that, even if there was no structural error, the original judge's pre-trial rulings were erroneous and justify reversal. We find each ruling to be proper.

### A.

Defendant asserts that the order admitting evidence of a prior offense, pursuant to CRE 404(b), to prove "plan, scheme, design, modus operandi, intent and preparation, [and] absence of mistake" was error. We disagree.

Before the trial court can admit evidence of other crimes, it must be satisfied, by a preponderance of the evidence, that the other crime occurred and that the defendant committed it. *People v. Garner,* 806 P.2d 366 (Colo. 1991). The trial court must then determine that the evidence is offered for

some proper purpose independent of the prohibited inference that the defendant has a bad character and committed the charged offense in conformity with that bad character, and that the evidence is logically relevant. *People v. Spoto*, 795 P.2d 1314 (Colo. 1990).

Our review of the record reveals that the trial court articulated and properly applied the four-part test for admissibility set forth in *People v. Spoto, supra,* and *People v. Garner, supra.* The trial court accordingly permitted the prosecution to present evidence of defendant's prior theft conviction involving a landscaping business and the building of garages in Denver, as reviewed by this court in *People v. Collie*, 682 P.2d 1208 (Colo.App.1983), but excluded evidence of more recent transactions involving repairs and sales of boats in Kentucky for which prosecution was then pending. The trial court gave a proper instruction to the jury regarding the limited purposes for which the evidence was admitted.

■ Defendant contends that the facts surrounding his prior theft conviction are so different from the circumstances giving rise to the charges here that those acts cannot properly be considered similar transactions. He notes that, in the transactions involved in his prior conviction, he received the customer payments in his own name and deposited them in his own account, that he contracted to build garages rather than landscaping, and that he was not acting on behalf of a corporation. While these distinctions appear to be correct based upon the record before us, we agree with the trial court's finding that the prior transactions are "virtually identical" to those at issue here.

Our examination of the record reveals nothing else to support defendant's contention that the facts of *People v. Collie, supra,* are so different than those presented here that those acts could not be considered similar transactions pursuant to CRE 404(b). Thus, we perceive no abuse of discretion in the trial court's ruling admitting that evidence.

### B.

Defendant also contends that the original judge erred by denying his attorney's first motion to withdraw. We disagree.

■ The trial court should grant court-appointed counsel's motion to withdraw only if it is satisfied that counsel cannot give the defendant effective representation because of deterioration of the attorney-client relationship. We review a denial of appointed counsel's motion to withdraw for abuse of discretion. *People v. Schultheis*, 638 P.2d 8 (Colo. 1981).

■ Here, defense counsel asserted at the hearing on the motion to withdraw that he could not be effective on behalf of defendant because defendant was not cooperating in the preparation of the defense. Defendant, however, stated that he was entirely satisfied with his attorney's performance and did not want him to withdraw. Neither defendant nor his attorney represented that there was any deterioration in the attorney-client relationship, other than the alleged non-cooperation, or that there was any conflict between them. The court properly noted that, under the circumstances, defendant's alleged non-cooperation in preparing his own defense was not something that could be cured by the substitution of new counsel.

■ Defendant further contends that the trial court deprived him of his constitutional right to self-representation by this statement at the hearing on the motion to withdraw:

> We're going nowhere at this stage because [defense counsel] can't be prepared because [defendant] is not working with him.... But I'm very hesitant to allow [defense counsel] to withdraw because [defendant] needs to be represented, and he certainly can't represent himself.

We are not persuaded that, without more, this comment can be construed as anything other than an expression that the case was a complicated one involving more than 4,000 pages of discovery, numerous exhibits, and complex legal issues, along with the court's understandable frustration with the delays preceding that hearing. Especially in light of the fact that defendant did not want his

attorney to withdraw and was planning to hire private counsel if the motion was granted, we are not persuaded that the trial court abrogated defendant's constitutional right to self-representation.

We perceive no abuse of discretion in the trial court's ruling denying defense counsel's motion to withdraw.

## C.

Defendant next contends that the trial court's ruling denying him permission to test, drill, or sample the victims' property deprived him of his constitutional right to present evidence in his own defense. We disagree.

■ Under the Sixth Amendment, a defendant has a due process right to present evidence in his defense. The right is not absolute, however, and the trial court must use its authority to accommodate all legitimate interests in the criminal trial process. *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *People v. Lanari*, 926 P.2d 116 (Colo.App.1996).

■ A violation of the right to present evidence occurs only when the defendant can make a plausible showing that the excluded evidence was relevant and material to his defense; it is not sufficient to show that it might have had some possible benefit. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); *People v. Bell*, 809 P.2d 1026 (Colo.App.1990).

■ Here, defendant was permitted to go on the property of the victims to inspect, photograph, measure, and survey. The trial court noted that defendant had not made a showing that any testing, drilling, soil sampling, or other investigation of the property that would require its destruction or alteration was likely to turn up any relevant evidence, especially because many or all of the homeowners had already performed remedial work that had altered the condition of the land and because of the admittedly minimal work done by the landscaping company.

Our review of the record reveals nothing to support defendant's contention that he was deprived of an opportunity to obtain evidence relevant and material to his defense. Rather, his argument is only that further testing and investigation might have had some possible benefit. Under these circumstances, defendant was not denied due process of law by the trial court's order. *See United States v. Valenzuela–Bernal, supra; People v. Bell, supra.*

## D.

Defendant nevertheless contends that it was reversible error for the replacement judge to adopt these pre-trial rulings of the original judge without an independent review. However, inasmuch as the original judge's pre-trial rulings were not erroneous, we perceive no error in the replacement judge adopting those rulings without an independent review.

## III.

Defendant further contends that the trial court erred when it denied his motion to dismiss his attorney and the attorney's second motion to withdraw. We disagree.

## A.

■ An indigent defendant is entitled to effective representation by a competent attorney appointed by the court. *Gideon v. Wainwright, supra.* However, an indigent defendant may not demand any particular attorney. *People v. Arguello*, 772 P.2d 87 (Colo.1989). The right to appointed counsel ensures only competent representation, and does not necessarily include "a meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 14, 103 S.Ct. 1610, 1617–1618, 75 L.Ed.2d 610, 621 (1983).

When an indigent defendant asserts dissatisfaction with his or her court-appointed attorney, the trial court must inquire into the matter, and "[i]f the defendant can establish 'good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict,' the court is required to substitute new counsel." *People v. Arguello, supra*, 772 P.2d at 94.

■ When a defendant's request for new counsel comes "on the eve of trial," the trial court must also consider that, while the defendant's right to competent counsel is paramount, a "defendant should not be allowed to use a motion for substitution of counsel as a delay tactic." *People v. Arguello, supra,* 772 P.2d at 94.

■ Here, a hearing was held on the Friday before trial, which was set to commence the following Tuesday. During that hearing, the original trial judge recused himself from the case because of the possible conflict arising from the grievance he had filed against defendant's attorney. Consequently, defense counsel again sought to withdraw, this time because defendant had stated he wanted a new attorney "with a clean slate without a grievance." The original trial judge ruled that any apparent conflict would be resolved by his recusal and suggested that defense counsel provide legal authority if he continued to believe that withdrawal was warranted.

The following Monday, the day before trial was set to commence, the replacement judge considered the authorities presented by defense counsel and his argument that defendant was entitled to reject his court-appointed attorney because "open communication between [defendant] and myself [is] virtually impossible." The court also heard defendant's statement:

I don't know the nature of the problem between [the original judge] and [defense counsel].... I have to have counsel that I believe I can depend on and can trust.

I know that [defense counsel] is a very competent attorney. I have no doubt about that.

The replacement judge ruled that the conflict was between defense counsel and the original judge and that the recusal had resolved that conflict. The court found:

[I]t doesn't appear in this case that there is in actuality a conflict as such. What there appears to be is some feeling on the part of [defendant] in terms of his relationship with [defense counsel], but frankly, it doesn't appear to me to be much different than I run into almost on a weekly basis in

terms of clients represented by the public defender who are objecting to the public defender representing them.... I don't find there is a conflict in this case that would require termination of the representation based upon the rules of professional conduct.

We accept the trial court's findings because they are supported in the record. *See People v. Vigil,* 955 P.2d 589 (Colo.App.1997). In light of those findings, and particularly defendant's acknowledgment that his attorney was "very competent," we find no abuse of discretion in the trial court's ruling that no substitution of counsel was necessary. *See People v. Arguello, supra.*

### B.

■ The next morning, the day trial was set to begin, defendant again sought to dismiss his court-appointed attorney, arguing that he was no longer indigent because he had obtained a loan with which to retain private counsel. The trial court again denied the motion, finding:

The situation as presented today is that we are about to begin a trial that has been set for some period of time. The case has been continued twice before. I notice that the Information in this case was originally [filed in 1995]. [It is] now some year and a half or more later and on the very morning of trial now we hear from the defendant that he wishes to hire private counsel....

I don't think the court needs to reach the issue of his indigency status at this point in time. There is no attorney present today moving to enter on behalf of [defendant] and even if there was, the issue then would be whether or not the Court should continue the trial.... [This is] an attempt to continue the trial so that he can get an attorney that he chooses.

He has had a year and a half essentially to come up with private counsel and to do so on the morning of trial the Court finds to be unreasonable....

[Defendant] requested the appointment of court-appointed counsel initially because of an indigency condition and there's been nothing presented to change that scenario

and the Court would deny a request to continue the matter simply to get another attorney on the case on the morning of trial.

We accept the trial court's findings because they are supported by evidence in the record. *See People v. Vigil, supra.* Based on those findings, as well as the findings of the previous day, we find no abuse of discretion in the trial court's ruling denying defendant's request for dismissal of counsel.

## IV.

Defendant next contends that the prosecution failed to prove two elements of the charged offense beyond a reasonable doubt. We address each contention separately.

## A.

Defendant first contends that the prosecution did not present sufficient evidence to prove, beyond a reasonable doubt, that he intended to deprive the victims permanently of their money. We disagree.

Pursuant to § 18–4–401, C.R.S.1998, the offense of theft occurs, as pertinent here, when a person:

> knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:
>
> (a) Intends to deprive the other person permanently of the use or benefit of the thing of value. . . .

■■■■■ When a defendant asserts that the evidence was insufficient to support a conviction, we review the evidence presented in the light most favorable to the prosecution to ascertain whether a reasonable juror could conclude that the prosecution proved the challenged element of the charged offense beyond a reasonable doubt. We may not substitute our judgment for that of the jury and reweigh the evidence or the credibility of witnesses, and we may not disregard the testimony of a witness unless it is utterly unbelievable. However, more than a modicum of evidence is required to prove an element beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988).

Evidence of a defendant's intent can "rarely be proven other than by circumstantial or indirect evidence." *People v. Valenzuela,* 825 P.2d 1015, 1016 (Colo.App.1991), *aff'd,* 856 P.2d 805 (Colo.1993).

■■■■ Here, defendant contends that the prosecution presented no evidence sufficient to prove that he intended permanently to deprive the victims of their money. Instead, defendant argues that the prosecution invited the jury to find him guilty solely on the basis of his prior theft conviction arising from similar transactions.

We are not persuaded. The trial in this case lasted approximately two and a half weeks and involved the testimony of numerous witnesses. The record reveals testimony by the victims and others showing a consistent pattern in which defendant negotiated contracts with the victims and collected initial deposits of one-third of the contract price. Following some soil preparation and other preliminary work, which the victims consistently felt was incomplete, defendant would request or demand the next one-third of the contract price as a progress payment. Thereafter, no additional work of any significance was done by the landscaping company. Many of the victims testified that the work that had been done was unworkmanlike and substandard.

Witnesses testified that additional advertising continued to appear, and defendant continued to negotiate contracts, accept deposits, and demand progress payments while prior customers were complaining about lack of progress and attempting to rescind their contracts. There was testimony that, after being arrested on the charges in this case and subsequently released on bond, defendant negotiated an additional contract and collected the initial payment.

Defendant did not testify. Defendant's witnesses presented testimony that, in some regards, was contradictory to that of the prosecution witnesses and also tended to show, if believed, that defendant did not personally receive any of the money he is accused of stealing. However, the jury was entitled to believe all, part, or none of each witness' testimony. *People v. Martinez,* 187 Colo. 413, 531 P.2d 964 (1975).

Taking this and the other evidence in the record in the light most favorable to the prosecution, we conclude that the prosecution presented more than sufficient circumstantial and indirect evidence to establish that defendant had the intent permanently to deprive the victims of their money.

### B.

Defendant next contends that the prosecution did not present sufficient evidence to prove beyond a reasonable doubt that he knowingly deceived the victims and that the jury was improperly instructed on this point. We disagree.

Pursuant to § 18–4–401, C.R.S.1998, the offense of theft occurs, as pertinent here, when a person:

> *knowingly* obtains or exercises control over anything of value of another without authorization, or by threat or *deception* .... (emphasis added)

Defendant argues that the language of § 18–4–401 proscribes only conduct in which, as relevant here, the defendant knows he or she is deceiving the victim and that the jury must be so instructed.

The relevant jury instruction stated, in pertinent part, that, to find defendant guilty of theft, the prosecution must prove beyond a reasonable doubt that he:

> 3. *knowingly*
>
> a. obtained or exercised control over
>
> b. anything of value
>
> c. which was the property of another person
>
> 4. without authorization or by threat and *deception* .... (emphasis added)

Based on the structure of the instruction, defendant argues that the jury could have found him guilty, contrary to the language of the statute, even if it determined only that he had unknowingly deceived the victims. We are not persuaded.

 Because defendant did not object to this purported error in the jury instructions at trial, we review this contention only for plain error. To constitute plain error, a faulty instruction must have "so undermined

the fundamental fairness of the trial that it casts serious doubt on the reliability of the verdict." *People v. Roy,* 948 P.2d 99, 102 (Colo.App.1997).

 Although defendant argues that this error is structural error, we reject that argument. To constitute structural error, an erroneous jury instruction must functionally have the effect of directing a verdict as to an element of the charged offense. *People v. Vance, supra.* Where a purportedly incorrect instruction *might* be construed by a reasonable jury to omit a material element, plain error analysis is proper when the defendant does not object to the instruction at trial. *People v. Price, supra.*

 The word "deception" is not defined in § 18–4–401, C.R.S.1998, in the criminal code generally, or in the jury instructions. Thus, we apply its ordinary meaning to ascertain the General Assembly's intent in adopting the statute. *See People v. Veloz,* 946 P.2d 525 (Colo.App.1997).

*Black's Law Dictionary* 406 (6th ed.1990) defines "deception" as the "act of deceiving; intentional misleading by falsehood spoken or acted" and as synonymous with "fraud." According to *Webster's Third New International Dictionary* 585 (1981), "deception" is "the act of deceiving, cheating, hoodwinking, misleading, or deluding" and is also synonymous with "fraud."

"Fraud" is defined as "an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him," *Black's Law Dictionary* 660 (6th ed.1990), or as "an intentional misrepresentation, concealment, or nondisclosure for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him." *Webster's Third New International Dictionary* 904 (1981).

In all the relevant definitions of "deception," there is an element of *intentional* misrepresentation with the *purpose* of misleading, and thus, instructing the jury that defendant's deception must be knowing would be entirely redundant and unnecessary.

Hence, we perceive no error in the instruction given to the jury.

## V.

Defendant next contends that the prosecution made an improper closing argument that constitutes plain error. We disagree.

 Alleged prosecutorial misconduct that is not objected to at trial is reviewed only for plain error. *Harris v. People,* 888 P.2d 259 (Colo.1995). "Unless a prosecutor's misconduct is flagrant or 'glaringly or tremendously' improper, it is not plain error...." *People v. Constant,* 645 P.2d 843, 847 (Colo.1982).

Defendant complains of five specific instances of alleged misconduct during the prosecution's closing arguments but did not object to any of them at trial. Our review of the record reveals that, while the prosecutor did commit some minor misconduct in some of the instances complained of, none of the misconduct standing alone, nor all of it in combination, was flagrant or glaringly or tremendously improper, and thus it does not

constitute plain error. *See People v. Constant, supra.*

## VI.

Defendant next contends that he is entitled to a remand for the trial court to conduct an extended proportionality review of the sentence imposed. However, because this issue was not raised in the trial court, we decline to consider it on appeal. *People v. Cagle,* 751 P.2d 614 (Colo.1988)(constitutional issues not raised in the trial court will not be considered when raised for the first time on appeal).

The judgment is affirmed.

Judge CRISWELL and Judge CASEBOLT concur.