The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Samuel V. MANDEZ, Defendant–Appellant.

No. 97CA0035.

Colorado Court of Appeals, Div. II.

Nov. 12, 1999.

Rehearing Denied Nov. 18, 1999.

Certiorari Denied May 15, 2000.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Paul Koehler, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Kathleen A. Lord, Chief Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge PLANK.

Defendant, Samuel Mandez, appeals a judgment of conviction entered upon a jury verdict finding him guilty of first degree felony murder. We affirm.

In 1992, when defendant was fourteen years old, a 78–year–old woman who lived alone was severely beaten and her throat was cut, resulting in her death.

During the resulting investigation, the police recovered approximately 40 finger and palm prints from the intact and broken glass, as well as the frame, of a basement window of the victim's house. Those prints did not match any then on file or of anyone the police investigated. One additional palm print, which belonged to the victim's son who had recently visited, was found in the home. Two burned matches were found, one just outside the broken window and the other inside on the basement floor.

The police found a baseball bat, a hammer, and a flashlight, each property of the victim, in a culvert near her home, along with shards of glass, a matchbook, and other items. Two of the glass shards were identified as pieces of the broken basement window and had dried blood consistent with that of the victim, and two other pieces of glass had a palm print that was ultimately determined to be from defendant. No usable fingerprints

were recovered from any of the other items found in the culvert. On the leaves of a nearby bush, the police found small amounts of gold paint. The baseball bat and hammer were each covered with blood consistent with that of the victim, and the flashlight also had a small amount of blood on it.

Although the police investigated various leads, none of those suspects could be connected to the crime, and initially no one was charged.

In 1996, defendant's fingerprints were first entered into the state-wide fingerprint matching system and were identified as those on the victim's window. Defendant established that he and his grandfather had painted the exterior of the victim's home approximately eleven months prior to her death, and he claimed his fingerprints were placed on the window at that time.

The police investigation revealed that the matchbook had come from a business in Henderson, Nevada. Defendant had relatives there who he had, on occasion, visited and those relatives had visited his family in Colorado. The burnt matches found by police at the scene were consistent with those remaining in the matchbook, but they could not be conclusively identified.

Presentation of this evidence at trial resulted in the conviction at issue here.

## I.

Defendant contends that the trial court erred by failing to suppress the evidence of his fingerprints, allegedly obtained in violation of his constitutional and statutory rights, which were used to identify the fingerprints on the victim's window. We disagree.

### A.

■ Defendant first contends that his fingerprints obtained during his incarceration in 1993 must be suppressed because his detention was illegal. We disagree.

■ Evidence must be suppressed if it is the fruit of an unconstitutional arrest or police detention. *People v. Rodriguez*, 945 P.2d 1351 (Colo.1997). However, evidence need not be suppressed if it is obtained in violation of a statutory provision unless it also amounts to a constitutional violation. *See People v. McKinstry*, 843 P.2d 18 (Colo. 1993) (evidence need not be suppressed when obtained pursuant to a search warrant constitutionally valid but issued in violation of statutory provisions); *People v. Shinaut*, 940 P.2d 380 (Colo.1997) (blood sample obtained in violation of implied consent statute need not be suppressed absent constitutional violation).

In 1993, defendant, at that time still a juvenile, was briefly incarcerated in the Arapahoe County jail on a "courtesy hold" pending his return to Adams County at the request of the Division of Youth Services. During that brief incarceration, defendant's fingerprints were taken, and those fingerprints were entered in the state-wide computer system some years later. Those fingerprints first brought defendant to the attention of the officers investigating the victim's death.

Defendant's only challenge to the 1993 taking of his fingerprints is that various statutory provisions might have been violated in his transfer from a juvenile offender boot camp to jail. Accordingly, since no constitutional violation is asserted, we conclude that the exclusionary rule cannot apply to those fingerprints even if one or more statutory provisions were violated as defendant maintains. *See People v. Shinaut, supra.*

### B.

■ Defendant further contends that his fingerprints obtained as a result of his arrest on an outstanding warrant should have been suppressed. Again, we disagree.

■ A police request for identification and a brief retention of the identification document produced to determine if there exist outstanding warrants for the arrest of the person identified is not, without more, a detention and is not subject to constitutional scrutiny. *People v. Paynter*, 955 P.2d 68 (Colo.1998).

Here, in 1996, defendant was contacted by a police officer in the basement of a home where he was a visitor. It is undisputed that

the police officer entered the home lawfully at the request of its owner and that the officer did not violate defendant's constitutional rights by contacting him or asking questions.

After concluding that there was no illegal activity occurring in the basement, the officer asked defendant for his identification and then contacted his dispatcher by radio for a warrant check. He retained defendant's identification card for approximately two to three minutes before learning that defendant had an outstanding arrest warrant for failure to appear in another jurisdiction.

The trial court found, with support in the record, that the police officer did not detain defendant until learning that there was an outstanding warrant for his arrest.

The facts here are virtually indistinguishable from those of *People v. Paynter, supra*, and thus, we conclude that it is dispositive of defendant's suppression claim.

Accordingly, there was no error in the trial court's ruling declining to suppress the fingerprint evidence obtained as a result of this arrest.

## II.

■ Defendant next contends that the trial court erred when it allegedly allowed the prosecution more time for jury *voir dire* than he was allowed. Specifically, he calculates that the prosecution had 70 minutes of *voir dire* and that he had only 30. However, our review of the record reveals little to support defendant's contention. In the absence of a showing to the contrary, we presume the regularity of the proceedings, and accordingly, we perceive no error in the trial court's handling of *voir dire*. *See Valdez v. People,* 168 Colo. 429, 451 P.2d 750 (1969).

## III.

■ Defendant contends that the trial court erred when it declined to impose sanctions on the prosecution for an alleged discovery violation. We disagree.

The victim's son, accompanied by the prosecutors and a police officer, viewed the replacement window panes in the victim's house approximately one week before trial. As a result of that examination, the victim's son told the prosecutors that his earlier testimony about the manner in which the window locked had been incorrect, and he modified his position to state that the window locking mechanism was only on the outer window pane, at the outside edge of the sliding pane. The son's trial testimony on this point is consistent with the police photographs of the window introduced at trial.

Defendant became aware of this change in the son's testimony during the prosecution's direct examination at trial. The prosecution elicited from the son the reasons for the change in his testimony, and defendant moved for sanctions or a mistrial on the basis that the prosecution had breached its duty to disclose exculpatory information pursuant to Crim. P. 16(I)(a)(2). The trial court instructed the jury that the prosecution had not disclosed this information to defendant and that defendant was hearing the inconsistent testimony for the first time at trial. Defendant subsequently cross-examined the victim's son about the change in his testimony.

The prosecution has a duty to disclose to the defendant any exculpatory material or information in its possession or control pursuant to Crim. P. 16(I)(a)(2), as well as a continuing duty to disclose newly discovered exculpatory material or information pursuant to Crim. P. 16(III)(b).

■ If the prosecution fails to disclose evidence in violation of Crim. P. 16, the trial court must fashion a remedy that will "restore as nearly as possible the level playing field that existed before the discovery violation." *People v. District Court,* 808 P.2d 831, 837 (Colo.1991).

■ In fashioning its order, the trial court should impose the least severe sanction that will adequately remedy the violation. On appeal, we review the trial court's decision only to determine if the trial court abused its discretion by entering an order that is manifestly arbitrary, unreasonable, or unfair. *People v. Loggins,* 981 P.2d 630 (Colo.App.1998).

▆ Here, the information at issue is not plainly exculpatory or inculpatory. However, whenever a prosecution witness' testimony changes significantly, that change is potentially exculpatory at least to the extent that it bears upon the witness' credibility. *See* CRE 611 (credibility of the witness is always relevant on cross-examination). Accordingly, we conclude that the prosecution failed to disclose potentially exculpatory information within its possession to defendant in violation of Crim. P. 16.

The trial court made no finding that there had been, in fact, a discovery violation. Rather, after hearing argument, the trial court instructed the jury as described above. We consider the trial court's cautionary instruction to the jury as being a tacit sanction for the failure to disclose. Further, we do not find the trial court's sanction to be manifestly arbitrary, unreasonable, or unfair and, thus, find no abuse of discretion.

### IV.

Defendant contends that there was insufficient evidence to support his conviction, and that the trial court thus erred when it denied his motion for acquittal. We disagree.

▆ Upon reviewing a claim of insufficiency of the evidence, we must consider the evidence presented, in the light most favorable to the prosecution, to ascertain whether a reasonable juror could conclude that the prosecution proved all elements of the charged offense beyond a reasonable doubt. We may not substitute our judgment for that of the jury and reweigh the evidence or the credibility of witnesses. However, more than a modicum of evidence is required to prove an element beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo. 1988); *People v. Collie,* 995 P.2d 765 (Colo. App.1999).

### A.

▆ Defendant first contends that there was insufficient evidence to establish that his fingerprints on the glass and frame of the victim's broken basement window were placed at the time the crime was committed. We disagree.

▆ When fingerprints are the only evidence connecting the defendant to a crime, other evidence must establish that the fingerprints were placed at the time the crime was committed rather than at some other time. Considerations relevant to such a showing include "the location of the print, the character of the place or premises where it was found and the accessibility of the general public to the object on which the print was impressed." *People v. Ray,* 626 P.2d 167, 170–71 (Colo.1981).

Defendant argues that, in light of his innocent access to the exterior and interior of the victim's home while he was helping to paint it, the prosecution failed to establish that the fingerprints were impressed at the time the crime was committed. We are not persuaded.

A prosecution fingerprint expert testified that some of the fingerprints were on the inside of the window panes, and that some of those inside prints corresponded to other prints on the outside in arrangements such that they were likely caused by defendant gripping the broken pieces of glass. Additional evidence established that the window was intact a few days before the victim was killed; that the victim was a meticulous housekeeper; that the only usable print found anywhere in the victim's house, other than on the broken basement window, was that of the victim's son on the refrigerator in the kitchen; that the victim's son had visited approximately two days prior to her death; and that the hammer, baseball bat, flashlight, and other items were found in a culvert midway between the victim's home and defendant's grandparents' home, a block away where defendant had stayed on numerous occasions. The expert also testified that, while it was impossible to ascertain how long defendant's fingerprints had been on the window, fingerprints are fragile and easily destroyed and that, thus, they do not last indefinitely.

Taking all the evidence in the light most favorable to the prosecution, we conclude that a reasonable juror could have found that defendant's fingerprints were placed on the

broken window at the time the crime was committed and at no other time.

## B.

■ Defendant also contends that the evidence was insufficient to prove that he and any others who may have entered the victim's home did so with the intent to commit theft. We disagree.

Defendant was charged with first degree felony murder predicated on an underlying offense of second degree burglary, which in turn was predicated on his or his possible companions' intent to commit the underlying offense of theft in the victim's home. *See* §§ 18–3–102(1)(b) and 18–4–203(1), C.R.S. 1998.

■ Evidence of a defendant's intent can rarely be proven other than by circumstantial or indirect evidence, *People v. Collie, supra,* and the finder of fact may properly infer the intent to commit theft from the defendant's conduct and the circumstances of the offense. *People v. Germany,* 643 P.2d 776 (Colo.App.1980).

■ In particular, when a person breaks and enters during the night, it is logical to infer that he or she intended to commit theft. *People ex rel. Russel v. Hall,* 620 P.2d 34 (Colo.1980). Also, when the underlying offense is theft in a prosecution for burglary, the prosecution has no burden to establish the particular item or items the perpetrators intended to steal, or the value of those items. Sections 18–4–203(1) and 18–4–401, C.R.S. 1998.

In addition to the fingerprint and other evidence already discussed, there was evidence of footprints tracking trace amounts of blood to many places in the victim's home, supporting an inference that the burglar or burglars were searching the house for things of value. There was also testimony that the victim was seen alive in the late evening and uncharacteristically failed to attend church early the next morning, evidence of a forced entry through an obscured basement window, and evidence that matches may have been used to provide light during the breaking of the window and entry into the base-

ment, supporting an inference that the intrusion and killing occurred during the night.

Taking the evidence in the light most favorable to the prosecution, and making all reasonable favorable inferences, we conclude that a reasonable juror could have concluded that defendant, and possibly others, broke into and entered the victim's home during the night with the intent to commit theft therein.

## V.

■ Defendant contends that the trial court erred by permitting the jury to consider inadmissible hearsay evidence regarding the fingerprints. We disagree.

Here, the fingerprint expert prepared transparent overlays of defendant's fingerprints from the window and then attached those overlays to the window panes to show the locations from which they were taken. Each of the overlays also contained the expert's notes as to when and how the print was lifted, the case number assigned, whether or not the print was identified, and for the identified prints, which of defendant's fingers made the print.

Defendant complains that the initials of an unidentified person were also included on each of the transparent overlays, and that those initials constitute hearsay corroboration of the expert's identification of the fingerprints. During trial, when asked about the writing on the transparencies, the expert identified all the writing as his own notes except "[t]here will also be another set of initials of another individual who also looked at the latent prints."

Contrary to defendant's argument, the initials of the unidentified other person, standing alone, make no assertion that any fact is true. Nor did the fingerprint expert imply any meaning to be attached to the initials, for he testified that they were written by someone who did no more than look at the fingerprints. Accordingly, since the initials make no assertion of truth, we conclude that they are not hearsay. *See* CRE 801(a)(1). Hence, there was no error in the trial court's ruling admitting the transparencies containing the initials into evidence. *Cf. People v.*

*Griffin,* 985 P.2d 15 (Colo.App.1998) (expert's statement that another expert reviewed the evidence and reached the same conclusion is inadmissible hearsay).

## VI.

■ Defendant contends that the trial court erred by impermissibly restricting the cross-examination of police officers regarding evidence that others might have burglarized the victim's home and killed her. We disagree.

■ A trial court has authority to impose limits on cross-examination, so long as the defendant's Sixth Amendment right of confrontation is not violated. *People v. Cobb,* 962 P.2d 944 (Colo.1998).

■ The scope of cross-examination is a decision entrusted to the sound discretion of the trial court, and we will not overturn its decision on appeal absent an abuse of that discretion. *People v. Marion,* 941 P.2d 287 (Colo.App.1996). Such an abuse of discretion occurs only if the trial court's ruling on this issue is manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra,* 849 P.2d 33 (Colo.1993).

Cross-examination should be limited to the subject matter of the direct examination as well as any other matters affecting the credibility of the witness. CRE 611(b).

Defendant argues that his right of confrontation was impermissibly restricted when the trial court refused to allow him to question police officers regarding hearsay and other inadmissible evidence connecting other suspects to the crime.

On direct examination, in response to the prosecutor's inquiry, the investigating officers stated that they had followed all the leads and had not found sufficient evidence to arrest any other suspect. On cross-examination, to refute that testimony, defendant sought primarily to elicit testimony regarding hearsay statements of various suspects that would tend to implicate them in the crime.

Noting that the involvement of others would not in and of itself exonerate defendant or reduce his culpability, the trial court limited defendant's cross-examination to negating the possible inference from the officers' testimony that there was *no* evidence implicating other suspects. The officers admitted that there was some information, including the hearsay statements, tending to incriminate other suspects, although one officer hesitated to call it "evidence" because of its tenuous and unverifiable nature.

In any event, defendant later introduced evidence through numerous witnesses that would tend to implicate other suspects in the killing of the victim and the burglary of her home. Several of the one-time suspects were called to testify and denied any involvement in the crime and were then questioned about, and impeached with, the hearsay statements defendant sought to elicit from the police officers.

Under these circumstances, the trial court did not abuse its discretion. Although defendant argues that extensive cross-examination was necessary to impeach the officers' credibility, to establish that the officers were biased, and to show that the investigation was insufficiently thorough, defendant has not established that he was prejudiced in his defense by the trial court's ruling.

## VII.

Defendant next contends that the trial court erred when it denied his motion for a continuance to obtain the presence of a witness. We disagree.

### A.

■ We will reverse the trial court's denial of a motion to continue only if it clearly abused its discretion. *People v. Scarlett,* 985 P.2d 36 (Colo.App.1998). A trial court abuses its discretion in denying a motion to continue if, under the totality of the circumstances, its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Crow,* 789 P.2d 1104 (Colo.1990).

■ Defendant had subpoenaed and wanted to call a witness who would testify that one of the other suspects had been sniffing gold paint on the day the victim was killed; that the suspect knew of the killing

before the victim's body was discovered; that the suspect had asked the witness to lie to create an alibi for him; and that the witness had asked another person to lie to create an alibi as to his own whereabouts. Although he was served with the subpoena while in jail a few weeks before trial, the witness did not appear and had not been located by defendant by the time he wanted to present his testimony. At that time, defendant had discovered only that the witness' family had indicated he might be in Nebraska.

The trial court issued a bench warrant for the arrest of the witness, but declined to grant a continuance because it was uncertain whether the witness could be located and because the offer of proof as to his testimony was largely cumulative of other evidence already admitted that tended to implicate the suspect.

In light of the totality of the circumstances, there was no abuse of discretion by the trial court in denying defendant's motion to continue.

### B.

■ In a related argument, defendant contends that the trial court erred by refusing to allow the missing witness' hearsay statements to be admitted as an alternative to a continuance. We disagree.

■ The decision to admit or exclude evidence is entrusted to the sound discretion of the trial court, and, absent an abuse of that discretion, its decision will not be reversed. *People v. Aponte*, 867 P.2d 183 (Colo.App. 1993).

The trial court excluded the offered evidence because it was inadmissible hearsay pursuant to CRE 801 and 802, and not subject to any of the exceptions set forth in CRE 803 and 804. There is nothing manifestly arbitrary, unreasonable, or unfair in the court's ruling, which simply applied the rules of evidence, and thus we are not persuaded that it abused its discretion.

Neither are we persuaded that defendant's right to compulsory process under the Sixth Amendment requires the admission of otherwise inadmissible hearsay under the circumstances presented here.

■ The trial court issued a warrant directing that the witness be arrested and compelled to appear if he could be found, but the prosecution and the court have no obligation affirmatively to seek out a non-appearing defense witness. Accordingly, it is not incumbent upon the trial court to admit, or upon the prosecution to stipulate to the admission of, otherwise inadmissible hearsay statements of a missing witness especially where, as here, the evidence would be largely cumulative. *See People v. Chastain*, 733 P.2d 1206 (Colo.1987).

### VIII.

Defendant contends that the trial court erred by not requiring the prosecution sufficiently to identify in its bill of particulars the items intended to be stolen by defendant or his possible companions, or the manner in which the victim's property was to be stolen. We perceive no error.

### A.

■ A bill of particulars is sufficient if it affords the defendant a fair opportunity to procure witnesses and to prepare for trial. *Erickson v. People*, 951 P.2d 919 (Colo.1998).

■ Defendant was charged with first degree felony murder, predicated on the crime of burglary of the victim's home. Upon defendant's motion, the prosecution was ordered to prepare a bill of particulars stating the predicate crime for the underlying charge of burglary. The prosecution filed a bill of particulars charging that defendant, or his possible companions, broke and entered the victim's home with the intent to commit theft therein.

During a pretrial motions hearing, defendant objected to the prosecution's bill of particulars because it did not identify the item or items defendant intended to steal. The trial court, noting that burglars seldom know what they intend to steal until after they have entered and that it is only the intent to steal that matters, ruled that the prosecution had no burden to identify the precise items defendant or his possible companions intend-

ed to steal. We agree with the trial court's ruling.

Here, the prosecution disclosed in its bill of particulars that it would attempt to prove intent to commit theft. Thus, defendant was sufficiently apprised of the offense against which he had to defend, and accordingly, there was no error in the trial court's acceptance of the bill of particulars.

### B.

■ During the preparation of written jury instructions, defendant again objected to the bill of particulars on the basis that the theft statute, § 18–4–401(1)(a) to § 18–4–401(1)(d), C.R.S.1998, recites four different ways in which the victim may be deprived of his or her property, and the prosecution should have been required to identify the particular manner of the intended theft. The trial court disagreed, but offered to instruct the jury on all four possibilities. Defendant and the prosecution then stipulated to instruct the jury pursuant to the general theft provision, § 18–4–401(1)(a), C.R.S.1998 (theft with intent "to deprive the other person permanently of the use or benefit of the thing of value").

Because defendant did not initially object to the bill of particulars on this ground, we deem this objection waived, and thus, it does not form a basis for reversal. *See People v. Joseph,* 920 P.2d 850 (Colo.App.1995).

### IX.

Defendant also contends that the trial court erred by permitting a witness impermissibly to bolster his own credibility. Again, we perceive no error.

### A.

■ Defendant called as a witness one of the suspects initially implicated in the death of the victim. On direct examination, after the witness had denied any involvement in the victim's death and had denied making any of the hearsay statements attributed to him, defendant impeached him with his prior convictions for robbery and giving false information to a pawn broker.

On cross-examination, the prosecution sought to rehabilitate the witness' testimony by eliciting that the offenses had occurred when the witness was a drug addict and that a religious conversion had changed his life.

Defendant argues that the evidence of the witness' felony convictions was introduced solely for the fact of the convictions, and that the nature of the conviction is, in essence, irrelevant as to the witness' credibility. We are not persuaded.

A conviction for a felony involving untruthfulness or deception apparent from the name or nature of the offense, such as giving false information to a pawn broker, the offense at issue here, which is offered to impeach a witness' credibility, is qualitatively different from other felony convictions, for it not only attacks the person's general character but also calls into doubt his or her truthfulness while testifying. This is especially true where, as here, the witness was called by the defense specifically for the purpose of eliciting testimony somewhat favorable to the prosecution and then impeaching the witness with his felony convictions and hearsay statements in an attempt to prove that the witness was lying and, thus, that the factual inferences flowing from the impeachment evidence were more likely to be true.

Moreover, reasonable inquiry regarding matters probative of the credibility of the witness is always relevant on cross-examination. CRE 611.

### B.

■ Defendant also complains that the witness' statement regarding his religious beliefs, offered to bolster his credibility, was improperly admitted in violation of CRE 610. However, defendant did not object to the testimony on that basis at trial, and accordingly, we consider this argument only for plain error. *See People v. Thompson,* 950 P.2d 608 (Colo.App.1997).

CRE 610 provides:

Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purposes of showing that by reason of their nature his credibility is impaired or enhanced.

Plain error occurs only when the appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Bogdanov v. People*, 941 P.2d 247 (Colo. 1997).

Here, upon inquiry by the prosecutor as to whether the witness had changed since his conviction, the witness responded:

A I was—at that time I was a drug addict. I was into a lot of violence. I was a disturbed young man, and since coming to prison, the drugs have been more available and everything else, but I'm not sure if I can—if this is acceptable in a court of law, but Jesus Christ saved by life.

Q Okay. The fact that Jesus Christ saved your life, then you understand the importance of telling the truth?

[DEFENSE COUNSEL]: Objection. Asked and answered. [Subsequently overruled.]

A Absolutely

The witness' statement plainly violates CRE 610. However, we are not persuaded that this isolated and marginally relevant testimony of a defense witness casts any serious doubt on the reliability of defendant's conviction.

## X.

Defendant contends that the prosecution committed prejudicial misconduct during closing argument that amounts to plain error. We disagree.

Alleged prosecutorial misconduct that is not objected to at trial is reviewed only for plain error. *Harris v. People*, 888 P.2d 259 (Colo.1995). "Unless a prosecutor's misconduct [during closing argument] is flagrant or 'glaringly or tremendously' improper, it is not plain error...." *People v. Constant*, 645 P.2d 843, 847 (Colo.1982).

Improper closing argument rises to the level of plain error if its probable effect is a verdict based on "bias and prejudice rather than on the relevant facts and applicable law." *Harris v. People, supra*, 888 P.2d at 269.

### A.

Defendant complains of several comments by the prosecutor that graphically described the victim's injuries. However, there was no error in these comments, and certainly no plain error, for they were proper comment upon the evidence the jury was permitted to consider.

### B.

Defendant also complains of a comment by the prosecutor in which, in pertinent part, he stated:

[S]ociety says we don't burglarize homes, and if you decide to burglarize a home and somebody dies, you will suffer the consequences.

What we are asking you to do is to find [defendant] guilty of that crime. *It's almost five years. It's time for consequences.* (emphasis added)

Defendant argues that the prosecution was inviting the jury to find him guilty based on the passage of time and the need to resolve an unsolved murder.

To the limited extent that the prosecutor's comment may direct the jury's attention away from the evidence and seek a conviction based on matters irrelevant to the question of defendant's guilt, we agree with defendant and we do not condone the prosecutor's final comment as quoted and emphasized above. However, in light of the prosecution's lengthy review of the evidence and the proper inferences that might be drawn therefrom, along with repeated reminders to the jury that the prosecution had the burden of proving defendant's guilt beyond a reasonable doubt, we do not perceive this comment to be flagrant or glaringly or tremendously improper, and thus, it does not constitute plain error. *See People v. Constant, supra.*

### C.

Defendant further contends that the prosecution committed misconduct warranting a mistrial or reversal when it at-

tempted to lessen the applicable burden of proof. We are not persuaded.

■ The trial court has broad discretion in ruling on objections made during closing argument, and absent a gross abuse of that discretion, we will not reverse the trial court's rulings. *People v. Moody*, 676 P.2d 691 (Colo.1984).

Defendant complains of these remarks by the prosecutor:

> Ladies and gentlemen, I submit to you that after you deliberate, if you can say to yourselves, I believe [defendant] committed this crime, then you have been convinced beyond a reasonable doubt of his guilt....
>
> And when it comes to reasonable doubt, read the instruction and remember that before you came in to this court, you knew very little if anything about this case, so any feelings that you have now or will have at the end of your deliberations about this case, it is because of what you have heard in this court, and if you believe that [defendant] committed this crime, then ladies and gentlemen, we have proven to you beyond a reasonable doubt that he has....
>
> Do we have evidence that a burglary was committed? What's a burglary? ... [B]urglary is that the Defendant ... at that same house ... on that date, he knowingly, unlawfully, broke and entered into and remained in [the victim]'s house with the intent to commit the crime of theft. And I submit to you, ladies and gentlemen, that this is what we call circumstantial evidence. When anybody breaks into somebody else's residence without authority and without permission in the middle of the night by breaking a basement window, I submit to you, ladies and gentlemen, there is one intent, and that's to rob them, or excuse me, to steal from them, or maybe they intended to kill them, but it is with the intent to commit a crime, and I submit in this case the crime was theft. That's the only reason you do it.

Defendant objected to the first two remarks, and the trial court instructed the jury to rely on the printed instruction regarding the meaning of reasonable doubt. The trial court did not abuse its discretion in so ruling on defendant's objections because, even if the prosecutor's remarks can be construed as lessening the burden of proof, any prejudice to defendant was cured by the trial court's instructions.

As to the third remark, we find no error in it at all. It is nothing more than fair comment upon the evidence and the inferences to be drawn therefrom which might support a conclusion that defendant committed burglary.

## XI.

Defendant next contends that the trial court erred by improperly instructing the jury in several respects, but again we perceive no error.

### A.

Defendant argues that structural error occurred when the trial court used a defective second degree burglary instruction. We disagree.

■ A jury instruction defining an offense that is framed in the language of the statute is generally sufficient and proper. *People v. Gallegos*, 950 P.2d 629 (Colo.App. 1997).

■ In the context of reviewing allegedly improper jury instructions in a criminal case, structural error occurs only when the instruction fails to inform the jury of all the essential elements of the offense charged. *Cooper v. People*, 973 P.2d 1234 (Colo.1999).

■ Defendant asserts that his conviction for felony murder predicated on second degree burglary must be vacated because the instruction used was the same as the one disapproved in *Cooper v. People, supra.* However, we do not agree with defendant's analysis of that case.

In *Cooper v. People, supra,* the supreme court reversed the defendant's conviction for second degree burglary because, it concluded, structural error had occurred when the jury was specifically instructed that the defendant's intent to commit the underlying

offense of assault could be formed after he had unlawfully entered the victim's dwelling. The instruction principally at issue in that case stated, in pertinent part:

> the intent to so commit a crime ... can be formed either before entry into the dwelling or after entry into the dwelling.

*Cooper v. People, supra,* 973 P.2d at 1237. Because that instruction misstated an essential element of the crime of second degree burglary, the supreme court determined that its use was structural error that, per se, necessitated reversal.

However, contrary to defendant's argument, the jury in this case was not so instructed. Rather, as to the elements of burglary, the jury was instructed in pertinent part as follows, without objection by defendant:

> 1. That the defendant ...
>
> . . . .
>
> 3. knowingly,
>
> 4. unlawfully broke and entered into and remained in a dwelling ...
>
> 5. with intent to commit therein the crime of Theft.

The jury instructions also contained the following definition:

> 'UNLAWFULLY ENTERS OR REMAINS' means a person who enters or remains in or upon premises when he is not licensed, invited, or otherwise privileged to do so.

A fair reading of the instructions given to the jury does not support a conclusion that it was misinformed as to one or more essential elements of the crime of burglary. The burglary instruction specifically required the jury to find that defendant or his possible companions "unlawfully broke *and* entered into *and* remained" in the victim's home, each with contemporaneous intent to commit therein the crime of theft.

We presume that the jury followed this instruction because there is nothing in the record to suggest otherwise. *People v. Bielecki,* 964 P.2d 598 (Colo.App.1998). Thus, the jury necessarily found that defendant or one of the other possible perpetrators both broke and entered into the home with the intent to commit theft. Either finding would be sufficient, in conjunction with proof of the other elements, to convict the perpetrator of burglary.

Accordingly, there was no reversible or structural error in the trial court's burglary instruction.

### B.

Defendant contends that the trial court erred when it refused to give the jury an instruction on the use of fingerprint evidence. We disagree.

■ The trial court must accurately instruct the jury on the law relevant to every issue presented. But, it must not give the jury an instruction which misstates the law or which unduly emphasizes some part of the evidence. *People v. Zapata,* 759 P.2d 754 (Colo.App.1988), *aff'd,* 779 P.2d 1307 (Colo. 1989).

■ Also, if requested by defendant, the trial court must give an accurate instruction embodying the defendant's theory of defense, if such theory is supported by any evidence and is not already included in the language of the other instructions, but the court is not bound by the language tendered by the defendant. *People v. Gracey,* 940 P.2d 1050 (Colo.App.1996).

■ Generally, the court should not instruct the jury as to abstract legal principles or give instructions that are excerpts or quotes from appellate opinions. *People v. Zuniga,* 631 P.2d 1157 (Colo.App.1981).

Defendant tendered an instruction based largely on the language of *People v. Ray, supra,* and *People v. Angel,* 701 P.2d 149 (Colo.App.1985):

> Fingerprint evidence is sufficient to convict only when the fingerprints clearly and unequivocally establish that an accused committed the crime. To satisfy this requirement of proof in cases based on circumstantial evidence, [sic] the fingerprints which correspond to those of the accused must be found in the place where the crime was committed under such circumstances as to rule out the possibility that they could have been impressed at a

time other than the time that the crime was committed.

The so-called "fingerprint evidence rule," which defendant asserts is embodied in the tendered instruction and which was adopted in *People v. Ray, supra,* has been applied only in the context of judicial review of the evidence to determine if it is legally sufficient to support a conviction. *See, e.g., People v. Angel, supra.*

■ As such, it sets forth the minimum legal evidentiary requirements to permit the case to go to the jury, or for a guilty verdict to survive a contention that the evidence was not sufficient to support it, when the only evidence of the defendant's guilt is fingerprints. *People v. Ray, supra.* But, once that legal determination has been made by the trial court, it is for the jury to decide the weight and credibility of the fingerprint evidence, as with any other evidence. *See People v. Traubert,* 625 P.2d 991 (Colo.1981).

■ Defendant argues that his tendered instruction is analogous to the stock instruction on direct and circumstantial evidence, that was here given to the jury in slightly modified form, which states a similarly abstract evidentiary principle, and which is itself, in essence, an excerpt from an appellate opinion. *See COLJI–Crim No.* 4:01 (1983); *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973).

That instruction, as given here, stated in pertinent part:

> The law makes no distinction between the effect of direct and circumstantial evidence.

This instruction informs the jury concerning the weight it may choose to give to a class of evidence. Defendant's tendered instruction, in contrast, instructs the jury on the weight it must give to certain evidence. Such an instruction would be an improper interference with the jury's function to determine the weight of the evidence. *See People v. Atencio,* 780 P.2d 46 (Colo.App.1989).

■ Finally, defendant's tendered instruction omits the critical element of the holding in *People v. Ray* that this limitation on the use of fingerprint evidence applies *only* when there is *no* other evidence connecting the defendant to the crime.

Here, we have applied the fingerprint evidence rule in determining whether defendant's motion for judgment of acquittal should have been granted. Although not extensive, there was some inculpatory evidence beyond the fingerprints, including the matchbook and matches, the pieces of glass with defendant's palm print found in the culvert along with the probable murder weapons, the location of the discarded murder weapons and evidence in the culvert midway between the victim's home and defendant's grandparents' home, and the placement of fingerprints on the broken window pane tending to indicate that defendant had gripped the pieces of glass after it was broken. Thus, giving defendant's tendered instruction would have impermissibly extended the fingerprint evidence rule to situations in which it was not intended to apply.

Defendant's tendered instruction is an incorrect statement of the law, and accordingly, there was no error in the trial court's refusal to so instruct the jury.

### C.

Defendant next contends that the trial court erred in responding to two written jury questions related to the fingerprints. We disagree.

The first jury question asked:

> Is there more then [sic] one CBI agent who has verified that the prints off of the window are the defendants [sic]

The second question asked:

> On the fingerprint overlays on the glass there are various sets of initials. Are these the initials from the people that examined the fingerprints.

In each case, the trial court responded with the following instruction, the first time with defendant's agreement but the second time over defendant's objection:

> Members of the jury you have received all of the evidence that you may properly consider to decide the case. You must rely on your collective memories as to the evidence already presented.

Defendant's objection on the second occasion was on the same basis previously discussed in Part V of this opinion: that the initials were hearsay and the jury must not be permitted to consider them for improper substantive purposes.

Because we have concluded that the initials were not hearsay, and the trial court properly instructed the jury that it had received all the evidence it was permitted to consider, we discern no error in these supplemental instructions to the jury.

## XII.

■ Defendant contends that the trial judge erred by declining to recuse himself and by proceeding to rule on his motion for a new trial after the judge had made himself a fact witness in the case. We disagree.

At trial, a police officer testified that he had called the telephone number on the matchbook found in the culvert. The information obtained corroborated the other information on the partially burned matchbook, and tended to establish that it came from a business in Henderson, Nevada, to which defendant and his family were linked. The prosecution offered the evidence for the purpose of establishing defendant's connection to the crime.

Defendant argued that, among other things, admitting the hearsay statement identifying the source of the matchbook was grounds for a new trial. The trial court disagreed, observing that the reliability of the information was easy to check simply by calling the telephone number on the matchbook, and the judge stated that he, too, had called the number in question.

In later discussion, it was made apparent that the trial court's telephone call occurred well after the jury's verdict was returned.

■ Section 16–6–201, C.R.S.1998, as well as the substantially identical Crim. P. 21, sets out several circumstances under which a trial judge is to be disqualified from hearing a case. In essence, the trial judge may not hear the case if facts are alleged that reasonably support an inference that he or she would be biased or prejudiced against or in favor of either party. *Smith v. District*

*Court,* 629 P.2d 1055 (Colo.1981); *see also* Colorado Code of Judicial Conduct Canon 2 (1998).

■ Defendant has not alleged any facts that reasonably support an inference of bias. Although it would be preferable for the trial court to refrain from making such an independent inquiry as to relevant facts of the case, we perceive no reasonable inference of bias or prejudice against or in favor of either party in the trial court's action, and the making of such an inquiry in and of itself does not constitute a ground for recusal.

Defendant also appears to argue that the judge was required to recuse himself because it might be necessary to call him as a fact witness in defendant's case. However, since defendant's trial had concluded well before the judge's telephone call, and since the judge's testimony as to the telephone call would be irrelevant in any post-trial proceedings, we reject this argument as well.

## XIII.

■ Defendant argues that the trial court erred by declining to conduct an extended proportionality review of his sentence, and he asserts that his sentence is unconstitutionally disproportionate to his offense. We disagree.

The penalty for first degree murder, as applicable to defendant based upon the date of his offense, is a minimum of life in prison without possibility of parole and a maximum of death. Sections 18–1–105(1)(a)(IV) and 18–1–105(4), C.R.S.1998. However, a person under the age of 18 years at the time the offense is committed may not be sentenced to death. Section 16–11–103(1)(a), C.R.S.1998. Accordingly, the mandatory sentence for defendant is life in prison without possibility of parole.

■ When a defendant asserts that a sentence is grossly disproportionate to the crime committed and is therefore in violation of the "cruel and unusual punishments" clauses of the Eighth Amendment and Colo. Const. art. II, § 20, a proportionality review is undertaken. *People v. Smith,* 848 P.2d 365 (Colo.1993). An "abbreviated propor-

tionality review," in which only the gravity of the crime and the sentence imposed are considered, is all that is required when the offense is a serious one. *People v. Medina,* 926 P.2d 149 (Colo.App.1996).

Moreover, great deference must be afforded to the General Assembly's authority to establish the punishments for crimes. *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *People v. Smith, supra.*

We review a trial court's proportionality decision *de novo. People v. Medina, supra.*

Defendant argues that, because of his age and the complete lack of any evidence to show that he intended to kill the victim, or acted in any way to cause her death, life in prison without parole is grossly disproportionate to his offense.

The trial court conducted an abbreviated review and concluded that first degree felony murder is a serious crime, that defendant was therefore not entitled to an extended proportionality review, and that the sentence imposed was not grossly disproportionate to the offense. We agree with the trial court's conclusions.

The General Assembly has determined that those who participate in the commission of certain criminal offenses, including burglary, during which someone other than one of the participants is killed, are as criminally culpable as those who kill with deliberate intent or extreme indifference to human life. Section 18-3-102(1), C.R.S.1998. We afford that determination substantial weight, and that alone is sufficient to uphold defendant's sentence under the circumstances here. *See People v. Smith, supra.*

Moreover, defendant's argument that his age should be considered is not persuasive. The supreme court has held that the defendant's age is not an appropriate factor to consider in conducting an abbreviated review of a life sentence. *Valenzuela v. People,* 856 P.2d 805 (Colo.1993).

---

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

Accordingly, we conclude that the trial court did not err in its review of defendant's sentence.

## XIV.

Defendant attached a copy of his rather lengthy motion for a new trial to his opening brief "to avoid repetition and because of page limitations" and asks that we also consider the issues raised therein which are not otherwise argued in the brief. The prosecution urges that such action represents a violation of C.A.R. 28(g), and asks that we ignore those additional issues.

Although we do not condone the use of attachments to exceed the page limits imposed by rule or order of this court, in light of the gravity of defendant's offense, the severity of his sentence, and the complexity of some of the issues raised, we have also reviewed the arguments raised only in the motion for a new trial. However, that review does not reveal any reversible error.

The judgment and sentence are affirmed.

Judge VOGT and Justice ERICKSON, \*, concur.