## No. 25820

**The People of the State of Colorado v. Marvin R. McClure**
(526 P.2d 1323)

Decided September 30, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, Tennyson W. Grebenar, Assistant, for plaintiff-appellee.

H. D. Reed, for defendant-appellant.

*In Department.*

Opinion by MR. JUSTICE GROVES.

The defendant was charged with and convicted of "the crime of theft by unlawfully taking money from the victim, Charolette F. Muilenburg, with the intent to permanently deprive said victim of the use and benefit of said property having a value of more than One Hundred Dollars ($100.00)." We find the evidence insufficient to support the verdict, and reverse.

In April 1971, a Mr. Eggers of Lakewood, Colorado received a long distance telephone call offering a "package" of lodging, food and drink in Las Vegas. He was advised that, if interested, he should telephone a certain Denver number. He called that number, reaching the travel agency operated by the defendant. A woman told him that the package would be $14, which would not include transportation. With materials furnished by the travel agency, he ordered the package for himself and his wife. Mr. and Mrs. Eggers interested Mr. and Mrs. Muilenburg in the matter, and the Muilenburgs purchased the same package, for a 3-day vacation in Las Vegas commencing August 6, 1971.

Mr. Eggers inquired of the defendant as to whether he could obtain a discount on air fare. The defendant offered to supply the two couples with airline tickets for $150 per couple as a part of a group, promising to deliver them on July 30, 1971. The defendant stated that, if they wished to avail themselves of the offer, the money would have to be paid to him by July 9th. On July 9th the two couples went to

defendant's office and Mrs. Muilenburg gave defendant a check for $300 for the four tickets. The check was made payable to one of defendant's trade names, "World Marketing." The defendant then advised them that he would make reservations on Frontier Airlines Flight #7 for August 6th. The check was deposited to the World Marketing bank account on July 12th.

Mr. Eggers testified:

"Because we were told we would not be able to get a discount directly through the airlines — we were supposed to work with him and he'd get it. We were told not to even call the airlines."

After July 9th Mr. Eggers telephoned the defendant a number of times, making various inquiries. On July 29th Messrs. Eggers and Muilenburg went to defendant's office to pick up the tickets. He told them that he had not obtained them yet, but that he would deliver the tickets to them personally on Monday, August 2nd. Not having received the tickets, Mrs. Muilenburg and Mr. and Mrs. Eggers went to his office on August 2nd and were advised that defendant was in Colorado Springs on business and that the secretaries in the office felt that they were out of a job. They returned to the office the following day and found the office "nailed shut." They never received the tickets and did not make the trip to Las Vegas. The defendant never made the airline reservations.

The defendant was in jail in Colorado Springs on an unrelated charge from July 30th to August 11th. Later he attempted to make refund to Mrs. Muilenburg of the $300, but she refused to accept it because this case had already been filed.

A representative of Frontier Airlines testified as follows: That an individual's round trip fare to Las Vegas was $106; that husband and wife could be ticketed for the round trip for $185.50; that, if a group of 40 or more applied for the round trip seven days before departure, the fare would be discounted 30%, but the husband-wife discount would not apply — *i.e.,* under the group rate each would pay 70% of

$106 or $74.20, and each couple would pay $148.40;[1] and that there would be no reason why individuals could not call concerning a group arranged by a travel service.

The defendant was charged with theft, pursuant to 1967 Perm. Supp., C.R.S. 1963, 40-5-2. The court instructed the jury under part of that statute as follows:

"You are instructed that under the laws of Colorado a person commits theft when he knowingly obtains or exerts unauthorized control over anything of value of another with the specific intent to deprive another permanently of the use or benefit of the thing of value."

There is no evidence that the defendant exercised unauthorized control over the money. Certainly, he was authorized to deposit the check in his bank account; there was no evidence as to what happened to the money thereafter. Applying our new rule as to circumstantial evidence announced in *People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973), we hold that the relevant evidence, when viewed as a whole in the light most favorable to the prosecution, is not sufficient to support a conclusion by reasonable minds that the defendant at any time had a specific intent to deprive these people of their money.

It is argued that the fact that the defendant collected $150, instead of $148.40, for each couple shows intent to deprive. He never stated the amount he would pay the airlines for the tickets. The difference of $1.60 is rather insignificant.

It is further contended that the fact that he did not perform shows the specific intent to deprive. Except for his incarceration on July 30th, he could have fully performed at that time. His sojourn in jail made it virtually impossible for him to perform and there is nothing in the record beyond the facts here related to indicate that, except for his incarceration, he would not have performed.

---

[1] At one point the transcript of testimony has the figure of $146.40, and both sides have used this figure in the briefs. However, it is plain from the record that $148.40 is the correct figure.

It is presented to us that his insistence upon having advance payment three weeks prior to the time that the airlines could ticket the group shows intent to deprive. It was the defendant's privilege to require his customers to pay well in advance.

The Attorney General submits that the defendant's advice to the Eggers and Muilenburgs not to call the airlines smacks of deception. This is the most relevant evidence in the record, but still does not justify a finding of intent to deprive. Assuming that the defendant was attempting to arrange a group and was not going to contact the airlines until the group was complete, it is true that it would be a futile thing for an individual passenger to contact the airlines.

The evidence establishes a creditor-debtor relationship, but not criminal theft.

The judgment is reversed and the cause remanded with directions to grant defendant's motion for directed verdict.

MR. JUSTICE KELLEY, MR. JUSTICE LEE and MR. JUSTICE ERICKSON concur.