**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**David CARLSON, Defendant–Appellant.**

### No. 01CA1125.

Colorado Court of Appeals, Div. V.

Feb. 13, 2003.

Certiorari Denied June 23, 2003.

Ken Salazar, Attorney General, Julia A. Thomas, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Lisa A. Vanderhoof, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, David Carlson, appeals the judgment of conviction for theft by deception on the grounds of a defective indictment, insufficient evidence, prosecutorial misconduct, an erroneous evidentiary ruling, and cumulative error. We affirm.

Defendant sold a car to the victim, who testified that defendant misled him concerning its mileage and prior ownership. Based

on the misrepresentations, the victim gave defendant a $1,100 down payment and signed a promissory note, in exchange for delivery of the car. The People did not establish the difference between the value of the car as represented and the purchase price, relying instead on the victim's testimony that he would not have bought the car had he known its true condition.

## I. Indictment

Defendant first argues the indictment was defective because it did not adequately inform him of the charge. He also argues his defense was prejudiced because he relied on the theory in the indictment, but the People obtained a conviction using another theory. We reject both arguments.

### A. Sufficiency

■ An indictment or information must satisfy the dual purposes of advising a defendant of the charge so the defendant can adequately prepare a defense and protecting the defendant against further prosecution for the same offense. *People v. Pratt*, 759 P.2d 676 (Colo.1988)(indictment); *People v. Zupancic*, 192 Colo. 231, 557 P.2d 1195 (1976)(information).

■ A substantive defect in an indictment or information renders a conviction void. *People v. Williams*, 984 P.2d 56 (Colo. 1999). However, an indictment or information is substantively sufficient if it tracks the language of the pertinent statute. *People v. Williams, supra; People v. Richardson*, 58 P.3d 1039 (Colo.App.2002).

Here, in charging defendant with one count of theft by deception under § 18–4–401, C.R.S.2002, the indictment tracked the language of the statute: "[Defendant] unlawfully, feloniously and knowingly obtained and exercised control over a thing of value of another ... without authorization and by threat and deception, and with the intent to permanently deprive the owner." The indictment also provided the details required by § 18–4–401(6), C.R.S.2002.

Accordingly, we conclude the indictment was not defective.

### B. Variance

■ Defendant next argues a fatal variance arose because the People's theory in the indictment and during pretrial proceedings was that he deprived the victim of the difference in value between a car with 75,002 miles and the same car with 133,000 miles, but at trial the People focused instead on the victim's $1,100 down payment as the "thing of value."

■ Two types of variance may arise between the offense in the charging instrument and the offense of which a defendant is convicted. A "simple variance" occurs when the charged elements are unchanged, but the evidence at trial proves facts materially different from those alleged. A "constructive amendment" occurs when the evidence at trial changes an element of the charged offense and alters the substance of the charging instrument. *People v. Rodriguez*, 914 P.2d 230 (Colo.1996).

■■ A simple variance is immaterial unless it prejudices the defendant's substantive rights. *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). We will generally sustain a conviction when the proof corresponds to the elements of an offense set out in the charging instrument. *People v. Rodriguez, supra.*

Here, the indictment described the "thing of value" as "four hundred dollars or more but less than fifteen thousand dollars in U.S. currency." In detailing the offense, the indictment referred to the victim's $100 deposit and $1,000 down payment, as well as to the difference between the value of the car with 75,000 miles ($5,000–$6,500) and the value of the same car with 125,000 miles ($3,500). Thus, although at trial the People addressed only the victim's $1,100 payment, we conclude the elements did not change from indictment to trial, and a constructive amendment did not occur.

Moreover, defendant could not have been surprised by evidence concerning the down payment, which was set forth in the indictment, and he provides no record support for his contention that during pretrial proceed-

ings, the People misled him concerning the thing of value at issue.

Defendant's alleged misrepresentations and the victim's alleged reliance primarily involved mileage and ownership, as similarly described in the indictment and developed at trial. The victim's payment to defendant of $1,100 for the car was not disputed. Hence, defendant had notice of the charge against him and sufficient opportunity adequately to prepare a defense.

Accordingly, we reject defendant's contention that a variance requires reversal.

## II. Sufficiency of the Evidence

Defendant next argues his conviction is not supported by the evidence, which he contends established only potential civil liability based on a debtor-creditor relationship. We disagree.

 When considering a challenge to the sufficiency of the evidence, we determine whether the evidence, when viewed as a whole and in the light most favorable to the prosecution, is sufficient to support the conclusion by a reasonable, prudent person that the defendant is guilty, beyond a reasonable doubt, of the offense charged. *People v. Christian,* 632 P.2d 1031 (Colo.1981). The jury should decide questions of witness credibility and the appropriate weight to be given conflicting evidence. *Taylor v. People,* 723 P.2d 131 (Colo.1986). Where reasonable minds could differ, the evidence is sufficient to sustain a conviction. *People v. Fuller,* 791 P.2d 702 (Colo.1990).

### A. Misrepresentation and Reliance

 We first reject defendant's contention that the evidence was insufficient to prove beyond a reasonable doubt that he made misrepresentations to the victim on which the victim relied.

Section 18–4–401(1), C.R.S.2002, provides in pertinent part: "A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and: (a) Intends to deprive the other person permanently of the use or benefit of the thing of value . . . ."

 Theft by deception requires proof that a defendant's misrepresentations to the victim caused the victim to part with something of value in reliance on the misrepresentations. *People v. Norman,* 703 P.2d 1261 (Colo.1985). A misrepresentation is a false representation of a past or present fact or a promise made with the intent not to perform. *People v. Lewis,* 710 P.2d 1110 (Colo.App. 1985).

The victim testified that defendant told him the car belonged to defendant's father and the odometer reading of 75,002 miles was accurate. He further testified that he purchased the car because of these representations.

Defendant does not challenge the evidence showing the car had considerably more than 75,000 miles when purchased by the victim and had multiple prior owners that did not include his father.

Nonetheless, defendant argues the evidence of reliance was insufficient because, before purchase, the victim had seen documents showing the odometer reading was not accurate and identifying several prior owners, none of whom shared defendant's last name. However, the victim denied that he understood the odometer information on the prepurchase documents to be as defendant contends.

Accordingly, we conclude the evidence of defendant's misrepresentations and the victim's reliance, albeit disputed, was sufficient to sustain the jury's verdict.

### B. Intent

 We also reject defendant's contention that the evidence was insufficient to prove he intended permanently to deprive the victim of something of value.

 The finder of fact may infer the intent necessary for theft by deception from a defendant's conduct and the surrounding circumstances. *People v. Stewart,* 739 P.2d 854 (Colo.1987). A defendant possesses the requisite intent when he or she obtains a victim's money or other property in a manner inconsistent with the victim's use and

benefit. *People v. Treat*, 193 Colo. 570, 568 P.2d 473 (1977).

Defendant argues the People did not prove he intended to deprive the victim of his $1,100 down payment because in exchange defendant gave the victim possession of and title to the car. However, we have concluded the evidence of defendant's misrepresentations to the victim and of the victim's reliance was sufficient. From this evidence, a jury could infer defendant made these misrepresentations intending that the victim would purchase a car that did not meet his needs.

Nevertheless, defendant asserts that because it was undisputed he applied the down payment and the promissory note towards the purchase price, and the People did not show the down payment and note exceeded the actual value of the car, his use of the down payment was not "inconsistent with the owner's use and benefit," as required in *People v. Erickson*, 695 P.2d 804, 805 (Colo.App. 1984). We are not persuaded.

Defendant's reliance on *Erickson* is misplaced. The division in *Erickson* reversed a contractor's conviction because the trial court excluded evidence that the contractor paid to subcontractors all money he obtained from the owner. The opinion does not indicate that the subcontractors' work differed from what the contractor had promised to the owner or that the contractor obtained the owner's money by deception.

Defendant's reliance on *People v. McClure*, 186 Colo. 274, 526 P.2d 1323 (1974), is similarly misplaced. That opinion also does not address whether the defendant obtained the victims' money by deception. It only holds that the conviction could not stand based merely on evidence that the victims' money was not applied for their benefit because circumstances beyond the defendant's control had prevented his application of the money as promised.

The parties have cited no Colorado theft case, and we have found none, addressing sufficiency of the evidence where, as here, proof of intent permanently to deprive rests solely on testimony that, but for a defendant's misrepresentations, the victim would not have entered into the transaction.

Although "but for" theft by deception cases appear infrequently, convictions in other states have been upheld in similar circumstances. *See, e.g., State v. Barker*, 128 Ohio App.3d 233, 714 N.E.2d 447 (1998)(victim received and kept puppy whose breed and health had been misrepresented).

Here, defendant's argument that application of the down payment was consistent with the victim's use or benefit is unpersuasive because the victim testified that, had he known the actual mileage on the car, he would not have bought it. Although the victim authorized defendant to apply the down payment to the purchase price, that authority concerned the car as represented. The jury could conclude that when defendant applied the down payment to the purchase price of a car that was not as represented, the victim's authorization ended. *See People v. Treat, supra.*

We are also unpersuaded by defendant's emphasis on the People's failure to prove that the car was worth less than the down payment plus the promissory note. Were such evidence necessary in what we have termed a "but for" theft by deception scheme, the case would turn solely on an objective analysis of exchange of value, without regard to subjective impact on the victim.

We discern no basis in the statutory language for this approach. The statute first addresses "anything of value." Value is an objective determination. *See, e.g., People v. Rosa*, 928 P.2d 1365 (Colo.App.1996)(People must prove reasonable market value of stolen items).

In contrast, the statute's deprivation requirement does not refer to "value" of the property stolen, but to "use or benefit" of that property. Use or benefit can reasonably be determined based on the particular needs of the victim. When, as here, the alleged deception would have been material to a reasonable person, measuring the impact of that deception subjectively does not prejudice the defendant, who chose to deal with the victim.

Here, whatever its value, the car was illiquid, whereas the victim's down payment was liquid. The victim was not in the business of

buying and selling used cars. Thus, the victim no longer had "use" of his down payment.

Furthermore, the victim testified that, once he learned of the car's actual mileage, it did not meet his objective of providing reliable transportation for his wife. Hence, the victim did not obtain the desired "benefit," despite ending up with possession of and title to the car.

■ The facts presented here might better fit other sections of the criminal code. *See* § 18–5–101, et seq., C.R.S.2002 (offenses involving fraud). However, to preclude use of § 18–4–401(1) for that reason would read "deception" out of the statute. Moreover, where criminal conduct violates more than one statute, the choice of charges generally represents a proper exercise of prosecutorial discretion. *See, e.g., People v. Wellington,* 633 P.2d 1390 (Colo.1981).

Accordingly, we conclude the evidence was sufficient that defendant intended permanently to deprive the victim of something of value.

### C. Debtor–Creditor Relationship

Defendant's argument that the evidence showed only a civil dispute because he and the victim had a debtor-creditor relationship arising from a business transaction is unavailing for similar reasons.

■ The failure of a debtor to repay a creditor does not alone establish theft. However, it can constitute theft when the debtor does not perform as promised in a business transaction, and, as here, direct or circumstantial evidence shows that the debtor established the relationship never intending to perform as promised. *People v. Stewart, supra; People v. Collie,* 995 P.2d 765 (Colo. App.1999). That evidence may involve a pattern of deception, as in *People v. Collie, supra,* or conduct only in the transaction with the victim, as in *People v. Stewart, supra,* and in this case.

Because of the evidence defendant deceived the victim into making the down payment, signing the promissory note, and completing the transaction, defendant's reliance on cases such as *People v. Rotello,* 754 P.2d

765 (Colo.1988), is misplaced. There, the defendant-lessee only failed to pay his landlord increased rent owed based on gross sales. Deception by the defendant to induce the landlord to enter into the lease was not discussed. Moreover, the "thing of value" at issue was money owed *to* the landlord, not money obtained *from* the landlord. Thus, in *Rotello,* "obtain[ing] ... without authorization" could not be shown. Here, the down payment was taken from the victim.

Accordingly, we conclude defendant's conviction is supported by sufficient evidence.

### III. Prosecutorial Misconduct

Defendant next contends prosecutorial misconduct occurred because the prosecutor cross-examined a defense witness about a nonexistent felony conviction, this cross-examination violated the rape shield statute, and the prosecutor violated the rules of discovery. We disagree.

### A. Prior Felony

■ We find no reversible error arising from the mistaken questions about the witness's convictions.

■ Section 13–90–101, C.R.S.2002, allows admission of a prior felony conviction to impeach the credibility of a witness. However, when the prosecutor cross-examines a witness about a prior felony conviction, the prosecutor must ask the question in good faith. *People v. Lewis,* 180 Colo. 423, 506 P.2d 125 (1973). If the witness denies the conviction, then the prosecutor should establish good faith with an offer of proof. *People v. Thompson,* 182 Colo. 198, 511 P.2d 909 (1973).

■ Determining good faith is within the trial court's discretion, and we will not disturb the determination absent an abuse of discretion. *People v. Renstrom,* 657 P.2d 461 (Colo.App.1982).

Here, on direct examination of a mechanic familiar with the car, defendant brought out that the witness had been convicted of a felony. On cross-examination, the prosecutor established that this conviction had been for sexual assault and kidnapping, and then

asked the mechanic whether he had a second felony conviction, also for sexual assault and kidnapping. The witness denied a second felony conviction. Defendant immediately requested a bench conference, at which the trial court ruled the question had been asked in good faith.

The prosecutor based the question on a National Crime Information Center criminal history report that listed a 1978 conviction for sexual assault and kidnapping with a sentence of fifteen to thirty years, as well as a 1984 conviction for sexual assault and kidnapping with a sentence of fifteen to twenty-four years. Thus, we conclude the trial court acted within its discretion when it determined the prosecutor's question about a separate conviction in 1984 was asked in good faith.

After both parties rested and before the jury began its deliberations, however, defendant showed that the criminal history report used the same case number and other information for both entries and thus merely repeated the 1978 conviction in 1984. He asked for a curative instruction that the mechanic had not been convicted of a second felony. The trial court declined to give the instruction, explaining that the jury had heard the question and the denial.

Defendant acknowledges the absence of any Colorado authority requiring a curative instruction under these circumstances. A curative instruction is usually given to overcome an evidentiary error. *See, e.g., People v. McNeely,* 68 P.3d 540, 2002 WL 31600819 (Colo.App. No. 00CA1187, Nov. 21, 2002). Here, the better practice would have been to give the requested instruction. However, in light of our conclusion that the trial court acted within its discretion in ruling that the prosecutor asked the question in good faith, we discern no error obligating the trial court to give a curative instruction.

### B. Rape Shield Statute

Defendant concedes he did not object during trial that the inquiry about the mechanic's prior felonies violated the rape shield statute, § 18–3–407, C.R.S.2002. Hence, we review for plain error, and we find none.

Unless necessary to correct plain error, an appellate court will decide only issues properly presented to the trial court by contemporaneous objection. *People v. Snook,* 745 P.2d 647 (Colo.1987). Plain error occurs only when the error so undermined the fundamental fairness of the trial that it creates serious doubt about the reliability of the conviction. *People v. Wood,* 743 P.2d 422 (Colo.1987).

As relevant here, the rape shield statute excludes evidence of a witness's prior or subsequent sexual conduct, except in narrowly defined circumstances. *People v. Melillo,* 25 P.3d 769 (Colo.2001). However, the statute applies only when either the witness is a sexual assault victim or the crime charged is a sexual offense. *See People v. Miller,* 981 P.2d 654 (Colo.App.1998).

Here, the mechanic was not a sexual assault victim, and the trial concerned a theft by deception, not a sexual offense. Contrary to defendant's assertion, *People v. Gholston,* 26 P.3d 1 (Colo.App.2000), did not extend the rape shield statute to protect perpetrators who are not also victims.

Accordingly, we conclude the prosecution did not violate the rape shield statute, and there was no error, much less plain error.

### C. Discovery Violation

Defendant also argues the prosecution violated Crim. P. 16(I)(a)(1)(V) by not providing him with a copy of the mechanic's criminal history before trial. The People agree that no report was provided, but point out that Crim. P. 16(I)(a)(1)(V) only requires that the prosecutor make available to the defendant the criminal record of the "accused, any codefendant or any person the prosecuting attorney intends to call as a witness."

The prosecution had no responsibility under Crim. P. 16(I)(a)(1)(V) to provide defendant with the mechanic's criminal history because he was a defense witness.

Accordingly, we conclude defendant was not deprived of a fair trial by alleged prosecutorial misconduct.

## IV. Evidentiary Ruling

■ Defendant next argues the trial court erred in refusing to admit an emissions test report on the car offered by defendant under CRE 807, the residual hearsay exception. We disagree.

■ Trial courts have considerable discretion in deciding on the admissibility of evidence, including application of the residual hearsay exception. *People v. Fuller,* 788 P.2d 741 (Colo.1990); *People v. Huckleberry,* 768 P.2d 1235 (Colo.1989). In general, we will not disturb an evidentiary ruling on appeal absent an abuse of discretion. *People v. Jensen,* 55 P.3d 135 (Colo.App.2001).

Hearsay is inadmissible unless an exception or exclusion applies. CRE 801, 802; *People v. Fry,* 74 P.3d 360, 2002 WL 31477777 (Colo.App. No. 00CA1459, Nov. 7, 2002).

To admit hearsay evidence under the residual exception, the proponent must establish: the statement has circumstantial guarantees of trustworthiness; the statement is evidence of a material fact; the statement is more probative of the material fact than any other reasonably available evidence; admitting the evidence serves the purpose of the rules of evidence and the interests of justice; and the adverse party had adequate pretrial notice. *People v. Fuller, supra,* 788 P.2d at 744.

Here, defendant called a Colorado Motor Vehicle Division Emissions Section employee and through him attempted to introduce the report, purportedly conducted on the car by a testing station no longer in business. The witness could only confirm the document was an emissions test report. Defendant argues this testimony, coupled with the fact the report had the same vehicle identification number (VIN) as the car, made the report admissible under CRE 807.

The trial court refused to admit the report because it found the VIN and testimony an insufficient guarantee of trustworthiness, noting that defendant did not present evidence of who conducted the test, whether the test was performed accurately, and whether the test was actually conducted on the car sold to the victim.

Thus, we perceive no abuse of discretion.

## V. Cumulative Error

Defendant finally argues the cumulative impact of the errors entitles him to a new trial. We disagree.

■ We may order a new trial when individual error does not warrant a new trial, but the aggregate impact of numerous formal irregularities denied the defendant a fair trial. *People v. Roy,* 723 P.2d 1345 (Colo.1986). However, when we find no individual error, or when the individual errors do not show an absence of a fair trial, reversal for cumulative error is not required. *People v. Dore,* 997 P.2d 1214 (Colo.App.1999).

We have upheld the trial court's rulings on the issues presented for appeal, and hence we further conclude there was no cumulative error.

Judgment affirmed.

Judge ROTHENBERG concurs.

Judge TAUBMAN dissents.

Judge TAUBMAN dissenting.

Because I agree with defendant, David Carlson, that the evidence does not support his conviction for theft under § 18-4-401(1)(a), C.R.S.2002, I disagree with part II(B) and (C) of the majority opinion and respectfully dissent.

This case arose out of defendant's 1992 sale of a used 1974 Mercedes Benz to the victim for $5,450. After taking a test drive, the victim paid defendant $1,100 as a down payment and signed a promissory note for the balance. The car's title listed a third party as lienholder. After the sale, the victim began experiencing mechanical trouble with the car, failed to make payments on the promissory note, and hid the car in a rented barn so that it would not be repossessed.

Defendant was charged with and convicted of theft based on his alleged misrepresentation of the mileage of the car.

## I. Intent

Defendant argues that the prosecution did not prove beyond a reasonable doubt the essential element that he intended permanently to deprive the victim of the use or benefit of a thing of value. I agree.

I conclude that as a matter of law a defendant cannot commit the crime of theft when, during a purchase, the victim receives an item worth more than the money the defendant receives. Accordingly, I disagree with the majority's conclusion that a theft conviction may be sustained in circumstances where proof of intent permanently to deprive a victim of the use or benefit of a thing of value relies solely on testimony that, but for the defendant's misrepresentations, the victim would not have completed the transaction, from which the victim nonetheless received some value.

A person commits theft when he or she "knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception" and "[i]ntends to deprive the other person permanently of the use or benefit of the thing of value." Section 18–4–401(1)(a). "A defendant has the requisite intent to commit the crime of theft if his [or her] intended use of another's money is inconsistent with the owner's use and benefit." *People v. Erickson*, 695 P.2d 804, 805 (Colo.App.1984).

When determining a challenge to the sufficiency of the evidence, appellate courts consider whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support the conclusion by a reasonable person that the defendant is guilty of the offense charged beyond a reasonable doubt. *People v. Christian*, 632 P.2d 1031, 1038 (Colo.1981).

Here, the evidence most favorable to the prosecution established that defendant sold the victim a used car for $5,450. Defendant told the victim that the car had been driven 75,000 miles and was owned by his elderly father, who rarely drove the car. The victim testified that he would not have purchased the car had he known that it had been driven 133,000 miles. The victim gave defendant $1,100 as a down payment on the car. In return, defendant applied the down payment toward the purchase price, and the victim and his wife signed a promissory note for the remaining balance. Defendant transferred title of the car to the victim, subject to a lien held by a third party in the amount of $4,450. The prosecution also presented evidence that someone had tampered with the car's odometer.

I conclude for several reasons this evidence was factually and legally insufficient to establish defendant committed the crime of theft under § 18–4–401(1)(a).

First, the information alleged that an expert in the valuation of used cars believed that such a car which had been driven 125,-000 miles was worth $3,500. However, at trial the prosecution presented no evidence of the value of the car. Instead, an automobile appraiser testified for the defense that if the car had been driven 135,000 miles, it was worth approximately $6,500 at the time of the sale and had probably increased in value about ten percent since that time. Another witness testified the car was eventually resold for $6,000.

Second, despite the victim's testimony that he would not have purchased the car had he known it had been driven 133,000 miles, there was no evidence that the victim knew the value of the car if driven 75,000 miles or if driven 133,000 miles.

Third, the prosecution did not proceed at trial on the theory that the thing of value was the difference between the value of the car if driven 75,000 miles ($5,000 to $6,500) as allegedly represented to the victim, and the value of the car if driven 133,000 miles ($3,500), the actual mileage according to the prosecution. Rather, the prosecution argued that the victim's $1,100 down payment constituted the thing of value. However, in my view, the evidence considered in the light most favorable to the prosecution established that the victim received a car worth $6,000 to $6,500, paid defendant $1,100 as a down payment, and was liable for a lien in the amount of $4,450. There was no evidence that the purchase price was the $1,100 down payment, plus both the amount of the promissory note and the third-party lien, which would have

totaled $9,990. The victim testified only that the total purchase price was $5,450.

Fourth, even though the car did not have the mileage the victim expected, he received use or benefit from his down payment because it was applied to the purchase price. Therefore, defendant did not use the thing of value, the down payment, inconsistently with the victim's use or benefit. *See* § 18–4–401(1)(a); *People v. Erickson, supra.*

Further, there was no evidence that defendant obtained or exercised control over the down payment without authorization. Instead, the undisputed evidence showed that the victim gave defendant the $1,100 down payment. *See People v. Gracey,* 940 P.2d 1050 (Colo.App.1996)(defining "without authorization"). Similarly, there was no evidence that defendant employed any threats.

Even if there were evidence of defendant's deception, still, as discussed above, there was no evidence that defendant intended to deprive the victim permanently of the use or benefit of his down payment, because the victim received a car of greater value in return. Even if the amount of the lien were considered, the evidence at most showed that the victim paid $1,100 and was responsible for a lien of $4,450, with a total "cost" of $5,550 for a car worth between $6,000 and $6,500.

Under these circumstances, it is not reasonable to conclude that defendant committed theft by obtaining control of the victim's $1,100 where the asserted deception is that, but for defendant's misrepresentations, the victim would not have purchased the car. The majority's interpretation disregards the actual fair market value of the car the victim received. Even if the victim would not have purchased the car had defendant not misrepresented the car's mileage, the victim still could resell the car for approximately $6,000, some $450 more than he paid for it.

This result is different in kind from the more typical theft in which the victim buys something, but receives in return nothing or an item of little or no value.

Here, by contrast, even if we assume that defendant misrepresented the mileage on the car, he cannot be said to have deprived the victim of "the use or benefit" of his $1,100, because the victim received a car in return worth that amount or substantially more, even considering the lien on the car. Thus, I would conclude defendant is entitled to a judgment of acquittal.

## II. Debtor–Creditor Relationship

Defendant next contends that the evidence established a debtor-creditor relationship and as such he can not be subjected to criminal prosecution for his conduct. I agree that a theft prosecution was not proper here.

There may be a criminal prosecution for theft where a debtor-creditor relationship exists, but only if the defendant intended permanently to deprive the victim of the use or benefit of something of value. *See People v. Collie,* 995 P.2d 765, 774–75 (Colo.App.1999)(defendant engaged in a consistent pattern of negotiating contracts, obtaining initial payments, performing minimal work, and then demanding additional payment without performing any additional work); *see also People v. Stewart,* 739 P.2d 854 (Colo.1987)(defendant's depletion of bank account was evidence of his intent permanently to deprive the victim of the value of its products). However, I have already concluded that evidence of such intent was lacking here.

*People v. Rotello,* 754 P.2d 765 (Colo.1988), provides a better analogy. There the supreme court held that the defendant-lessee's failure to pay a percentage of his gross profits to the county-lessor as mandated by his lease was not felony theft from the county. The money owed by the defendant to the county did not constitute "anything of value of another" under the theft statute, because "no money collected by [the defendant] became [the county's] property until it was transferred by [the defendant] in payment of the obligation." *People v. Rotello, supra,* 754 P.2d at 767 (quoting *People v. Treat,* 193 Colo. 570, 577, 568 P.2d 473, 477 (1977)); *see also People v. McClure,* 186 Colo. 274, 526 P.2d 1323 (1974)(evidence established debtor-creditor relationship rather than theft where there was no evidence of intent to deprive and no evidence defendant exercised unau-

thorized control over money given to him for a travel package).

In my view, a broad reading of the theft statute to allow criminal prosecution under the circumstances here would render meaningless the specific intent permanently to deprive another person of the use or benefit of a thing of value required under § 18–4–401(1)(a). *See Dover Elevator Co. v. Indus. Claim Appeals Office,* 961 P.2d 1141 (Colo. App.1998)(words and phrases should be given their plain and ordinary meaning, unless the result is absurd); *see also People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986)(courts should avoid statutory constructions that defeat the clear intent of the General Assembly). Such a broad interpretation would allow criminal prosecution of theft where a customer is dissatisfied with a purchase, even if he or she received the merchandise and the alleged thief credited the payment towards the purchase price.

This conclusion is supported by the overall statutory scheme of the criminal code, which defines separate fraud and motor vehicle offenses for this type of conduct. *See People v. Triantos,* 55 P.3d 131, 134 (Colo.2002)(courts must construe each provision of a comprehensive statutory scheme to effectuate the overall legislative intent). In § 18–5–101, et seq., C.R.S.2002, the General Assembly has defined numerous offenses involving fraud, such as forgery, simulation or impersonation, fraud in obtaining property or services, fraudulent and deceptive sales and business practices, offenses related to the Uniform Commercial Code, unauthorized use of financial transaction devices, and equity skimming of a motor vehicle. *See, e.g.,* §§ 18–5–102, 18–5–110, 18–5–301, 18–5–803, C.R.S.2002. Thus, the General Assembly is well aware of the wide range of fraudulent conduct, not all of which is theft.

In addition, the Certificate of Title Act makes it unlawful for any person to use or install any device that "causes an odometer to register any mileage other than the true mileage driven." Section 42–6–202(1), C.R.S. 2002. It is further unlawful for "any person or the person's agent to disconnect, reset, or alter the odometer of any motor vehicle with the intent to change the number of miles indicated thereon." Section 42–6–202(2), C.R.S.2002.

Here, where the evidence did not establish defendant committed the crime of theft, I conclude there was either a civil debtor-creditor relationship as in *People v. Rotello, supra,* or, at most, a basis for criminal prosecution for an offense involving fraud or odometer tampering. Accordingly, I would reverse the judgment of conviction.