The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Robert J. WITEK, Defendant–Appellant.

No. 02CA1218.

Colorado Court of Appeals,
Div. V.

Feb. 12, 2004.

Certiorari Denied Aug. 16, 2004.

Ken Salazar, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Joseph Saint–Veltri, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge PICCONE.

Defendant, Robert J. Witek, appeals the judgment of conviction entered upon jury verdicts finding him guilty of theft and of false statement or representation material to a claim for recovery under the Workers' Compensation Act. We affirm.

Defendant was the owner of a construction company. On May 23, 1999, he hosted a barbecue at his home attended by his girlfriend (codefendant) and two guests. Codefendant and one of the guests, the driver, took defendant's newly purchased motor scooter for a "test drive." An accident occurred, and both were injured.

The following day, defendant reported the accident to his insurance agent and explained that codefendant was an employee who was on a work-related errand at the time of the accident. Defendant directed his bookkeeper to file a workers' compensation claim on codefendant's behalf. The bookkeeper testified she refused because codefendant "didn't work for the company." Eventually, another employee agreed to fill out the necessary paperwork. Defendant's insurance agent filed a proof of injury form with the Colorado Compensation Insurance Authority based on information received from defendant.

Approximately one month later, defendant and codefendant made statements to a claims adjuster for the workers' compensation insurance carrier indicating that codefendant was an employee of the construction company and was delivering blueprints for the company at the time of the accident. Over the course of the next few months, codefendant received $14,920.23 in disability payments and $30,682.83 in medical benefits.

After resigning, the bookkeeper sent a letter to the insurance company stating codefendant did not work for defendant's company.

I.

Defendant contends the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to convict him of false statement or representation in that he never filed a claim. Further, he argues there was insufficient evidence to convict him of theft because he did not receive anything of value. We disagree.

When assessing the sufficiency of the evidence supporting a guilty verdict, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *People v. Sprouse,* 983 P.2d 771, 777 (Colo.1999); *People v. Beatty,* 80 P.3d 847 (Colo.App.2003); *see People v. Gonzales,* 666 P.2d 123, 127 (Colo.1983).

> When ruling on a motion for judgment of acquittal, the trial court must consider both the prosecution and the defense evidence. In performing this function, the court is bound by five well-established principles of law. First, the court must give the prosecution the benefit of every reasonable inference, which might be fairly drawn from the evidence. Second, the determination of the credibility of witnesses is solely within the province of the jury. Third, the trial court may not serve as a thirteenth juror [nor] determine what specific weight should be accorded to various pieces of evidence or by resolving conflicts in the evidence. Fourth, a modicum of relevant evidence will not rationally support a conviction beyond a reasonable doubt. Finally, verdicts in criminal cases may not be based on guessing, speculation, or conjecture.

*People v. Sprouse, supra,* 983 P.2d at 778; *People v. Beatty, supra,* 80 P.3d at 851–52.

### A. False Statement or Representation

■ Defendant argues that the statute concerning false statements and representations, § 8–43–402, C.R.S.2003, applies only to an individual who "files a claim" seeking workers' compensation benefits. According to defendant, because he "never, directly, or indirectly, filed or caused to be filed," a "claim," the evidence at trial was insufficient to convict him. We disagree.

The interpretation of a statute presents a question of law. Thus, our review is de novo. *Hendricks v. People*, 10 P.3d 1231 (Colo. 2000).

In construing a statute, we must determine and give effect to the intent of the General Assembly. *Support, Inc. v. Indus. Claim Appeals Office*, 968 P.2d 174 (Colo.App.1998). The interpretation of the statute commences with the statute itself. If the statute clearly sets forth the legislative purpose and the language is clear, we need not resort to other rules of statutory interpretation and will apply the statute as written. *Holliday v. Bestop, Inc.*, 23 P.3d 700, 705 (Colo.2001); *People v. Shinaut*, 940 P.2d 380 (Colo.1997); *People v. Prendergast*, 87 P.3d 175, 2003 WL 22305243 (Colo.App. No. 02CA1148, Oct. 9, 2003). We read and consider statutes as a whole, construing each provision in harmony with the overall statutory scheme, structure, and purpose. *Whitaker v. People*, 48 P.3d 555 (Colo.2002); *People v. Prendergast, supra*.

Section 8–43–402 states:

> If, for the purpose of obtaining any order, benefit, award, compensation, or payment under the [Workers' Compensation Act], either for self-gain or for the benefit of any other person, anyone willfully makes a false statement or representation material to the claim, such person commits a class 5 felony and shall be punished as provided in section 18–1.3–401 [formerly codified at § 18–1–105], C.R.S., and shall forfeit all right to compensation under said articles upon conviction of such offense.

Here, contrary to defendant's assertion, the language of § 8–43–402 is clear. Section 8–43–402 does not require the individual accused of false statement or representation to file or caused to be filed a claim. Further, there is no requirement the false statement or representation be made on any particular form or in any particular manner. The statute applies to "anyone [who] willfully *makes a false statement or representation material to the claim*" (emphasis added). In using this language, the General Assembly chose not to limit the application of the statute to the filing of a claim or to false statements or representations made on a particular claim form.

Defendant's proposed interpretation is contrary to the statute's language that expressly prohibits false statements or representations made "either for self-gain or for the benefit of any other person," to obtain "any order, benefit, award, compensation, or payment." Defendant's reading of the statute would render it meaningless and irrelevant, a result we must avoid. *See People v. Terry*, 791 P.2d 374 (Colo.1990).

Here, defendant stated to his insurance agent that codefendant was on a work-related errand at the time of the accident. After telling his bookkeeper he wanted to "help codefendant out financially," he asked her to file a proof of injury form. Defendant stated to the insurance claims adjuster that codefendant worked for him, doing interviews and "running," was paid $800 per week, and was on a work-related errand at the time of the accident.

Defendant testified that codefendant began work for the company approximately four months before the accident. Because codefendant was not financially dependent on her income from the company, she was not paid on a weekly or monthly basis. Defendant presented evidence that on the day before the accident, he wrote codefendant her first paycheck for $8,000, which codefendant destroyed the day of the accident because she wanted payroll taxes withheld. A paycheck was issued fourteen months later, after criminal charges were filed, with payroll taxes withheld.

Contrary to defendant's assertion, the driver of the motor scooter testified that the barbecue and test ride were not work-related. The other guest attending the barbecue testified similarly and did not hear any dis-

cussion about delivering blueprints. Two former project managers testified codefendant was not an employee. One stated codefendant came into the office "[m]aybe every other week, sometimes once a month." The other testified defendant did "not specifically" consider codefendant an employee. Likewise, defendant's former bookkeeper testified codefendant was not an employee because defendant "told me she didn't work for the company"; the company had no personnel file on her; and she never received a company paycheck. Additionally, the Department of Labor's records demonstrated that during 1999 codefendant worked for another company, not defendant's company, and her earnings from that company amounted to her entire declared income that year. The Colorado Department of Revenue's data confirmed the Department of Labor's data.

Accordingly, we conclude there was sufficient evidence to convict defendant of false statement or representation under § 8–43–402.

## B. Theft

■ Next, defendant contends the trial court erred in denying his motion for judgment of acquittal as to the theft charge because he did not acquire, either directly or as a complicitor, "anything of value whatsoever." We disagree.

Defendant was convicted under § 18–4–401(1)(a), C.R.S.2003, which states: "A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and: ... Intends to deprive the other person permanently of the use or benefit of the thing of value...."

■ Contrary to defendant's assertion, it is not necessary that a defendant maintain absolute control over the stolen property for his or her own personal use. A conviction for theft by deception will stand where the intended use of the stolen property is inconsistent with the owner's use or benefit and the victim parted with something of value in reliance on the defendant's misrepresentation. *People v. Norman*, 703 P.2d 1261 (Colo.1985); *People v. Carlson*, 72 P.3d 411

(Colo.App.2003). A misrepresentation is a false representation of a past or present fact. *People v. Carlson, supra; People v. Lewis*, 710 P.2d 1110, 1116–17 (Colo.App.1985).

We reject defendant's contention that § 18–4–401 requires proof that he personally acquired anything of value. To the contrary, one need not personally benefit from the theft to be found guilty. *See People v. Mendro*, 731 P.2d 704 (Colo.1987)(the fact that defendant did not use his customers' money for his own personal use was not a defense to theft); *People v. Pedrie*, 727 P.2d 859 (Colo.1986)(defendant committed theft when he diverted proceeds of partner's check to his mother's account without partner's authorization).

■ We also disagree with defendant's assertion that, because the workers' compensation carrier would be paid back in full when codefendant recovered damages in her civil suit against the driver, there was insufficient evidence to prove he intended to permanently deprive the victim of something of value. A defendant possesses the requisite intent when he or she obtains a victim's money in a manner inconsistent with the victim's use and benefit. *See People v. Carlson, supra*. The fact finder may infer the intent necessary for theft by deception from a defendant's conduct and the surrounding circumstances. *People v. Carlson, supra*.

Accordingly, we conclude the evidence is sufficient to establish theft by deception.

## II.

Next, defendant contends the trial court erred in rejecting his tendered jury instructions and in instructing the jury that the crime of false statement does not require proof of specific intent as one of the elements. He also contends the trial court did not correctly define "material to the claim" in the context of a workers' compensation claim and did not define the critical word "claim." We are not persuaded.

Defendant objected to the definition of the word "claim" and tendered instructions setting forth definitions of "material to the claim." Defendant's tendered instructions were rejected by the trial court. Therefore,

with respect to these contentions, to the extent error occurred, we apply the harmless error standard, which requires reversal "unless the error does not affect substantial rights of the defendant." *People v. Garcia,* 28 P.3d 340, 344 (Colo.2001).

With regard to defendant's remaining contention regarding intent, which he did not raise below, we apply the plain error standard. *See People v. Richards,* 23 P.3d 1223 (Colo.App.2000). Under the plain error standard, the defendant must demonstrate that the instruction affected a substantial right, and the record must demonstrate a reasonable possibility that the error contributed to the defendant's conviction. *People v. Garcia, supra,* 28 P.3d at 344; *see also Bogdanov v. People,* 941 P.2d 247, 255–56, *amended,* 955 P.2d 997 (Colo.1997).

The jury instruction on false statement read, in pertinent part:

The elements of the crime of False Statement for the purpose of obtaining an order, benefit, award, compensation or payment under the Workers' Compensation Act of Colorado are:

1. That the defendant ...

3. for the purpose of obtaining any order, benefit, award, compensation, or payment under the Workers' Compensation Act of Colorado;

3 [sic] for self-gain, or for the benefit of another;

4. willfully;

5. made a false statement or representation;

6. that is material to the claim.

A statement is "material to the claim" if it could have affected the course or outcome of an official proceeding, or the action or decision of a person in a position to grant or deny the award or payment of workers' compensation benefits.

## A. Claim

█ We reject defendant's argument that the jury instruction should have defined "claim" as a request for benefits made by the employer or employee on a form prescribed by the Director of the Colorado Compensation Insurance Authority.

█ This proposed definition is not an element set forth in § 8–43–402, and therefore, an instruction containing it is not required. A court should not give an instruction that contains a misleading or incorrect statement of the law. *People v. Bossert,* 722 P.2d 998 (Colo.1986).

Accordingly, there was no error.

## B. Material

█ Next, defendant argues the trial court erred in instructing the jury that a statement is material to the claim if it "could have affected" the outcome of an official proceeding. We conclude there was no reversible error.

█ A jury instruction that tracks the language of the statute in question is adequate if the language is clear. *People v. James,* 40 P.3d 36 (Colo.App.2001).

At trial, defendant tendered several jury instructions defining the phrase "material to the claim" as "calculated to and probably would affect," "intended to and likely would affect," or "calculated to and likely would affect" the cause or outcome. Defendant cites no authority for the proposed definitions.

█ Assuming, without deciding, that the trial court's definition of "material to the claim" was incorrect and that defendant's definitions were correct, we conclude there was no reversible error. In light of the evidence against defendant, we conclude the alleged error could not have reasonably contributed to defendant's conviction. Accordingly, any error was harmless.

## C. Intent

█ Defendant argues the jury was erroneously instructed that the crime was one of general, not specific, intent. We are not persuaded.

█ Section 8–43–402 requires the mental culpability of "willfully," which describes a general intent crime. *See* § 18–1–501(6), C.R.S.2003. The General Assembly adopted the definitions of "criminal negligence," "intentionally," and "knowingly" or "willfully," § 18–1–501(3)–(6), C.R.S.2003, to "define clearly the different levels of culpability that could be required for the commission of vari-

ous offenses." *People v. Hall,* 999 P.2d 207, 217 (Colo.2000); *see also People v. Griego,* 983 P.2d 99 (Colo.App.1998), *aff'd,* 19 P.3d 1 (Colo.2001). Accordingly, if the General Assembly had intended to require a specific intent mens rea for § 8–43–402, it would have used the words "intentionally" or "with intent." *See People v. Lawrence,* 55 P.3d 155, 163 (Colo.App.2001)("had the General Assembly intended to make the ... offense a specific intent crime, it would have done so").

Accordingly, the trial court did not commit error, plain or otherwise.

### III.

Defendant contends his conviction should be reversed because the verdict acquitting his codefendant of theft rendered the verdict against him legally implausible. We are not persuaded.

The supreme court expressly disavowed the doctrine of inconsistent verdicts in *People v. Frye,* 898 P.2d 559 (Colo.1995), with two narrow exceptions. The first, codified in § 18–2–206(2), C.R.S.2003, concerns criminal charges of conspiracy and is not applicable here. The second exception applies only when the existence of an element of one crime logically negates the existence of a necessary element of another crime. Under these circumstances, guilty verdicts on both charges are legally and logically inconsistent and therefore should not be sustained. *See also People v. White,* 64 P.3d 864 (Colo.App. 2002).

Here, the exceptions to the doctrine of inconsistent verdicts do not apply. The evidence presented as to defendant and codefendant, although similar, was not identical. The jury could have concluded defendant was guilty of theft even though codefendant was not.

Judgment affirmed.

Judge CASEBOLT and Judge ROY concur.